Submitted July 31, accused suspended for 60 days November 15, 1978

In re Complaint as to the Conduct of
JOHN H. FULLER, *Accused.*
(No. 1405, SC 25714)

586 P2d 1111

No appearances.

PER CURIAM.

## PER CURIAM.

This disciplinary proceeding grew out of the accused's failure to communicate frankly with his clients. The facts of the case are largely undisputed.

Mr. and Mrs. Stuart Thomson, the clients of the accused, own property in Polk County. Some of their neighbors use a road that runs through the Thomsons' land. Because the road had been misdescribed in a previous deed, the Thomsons felt that they could close the road. In August of 1973 they employed the accused to advise and assist them in accomplishing the road closure.

■ The accused advised the Thomsons to fence the road to discover who was using it. They did so. The accused then prepared a complaint charging trespass against certain parties. The record does not disclose the details. The accused allowed his clients to believe that he had filed the complaint and had taken judgment by default in their favor. In fact, he had done neither. Mr. Thomson asserted that the accused actually told them that he had filed and taken default judgment. We are sure that Thomson believes this, but, on de novo review of the record, find that the accused merely allowed them to believe that he had filed and taken the default judgment. We hasten to add that the ethical difference between active misrepresentation and failure to correct a false impression that one has given is of little import. Either act on accused's part is deceitful.

It is apparent from the record that the accused's misconduct was a result of deceit, procrastination and failure to keep in touch with his clients:

"Q. This complaint you never did file?
"A. No, that was never filed.
"Q. Why?
"A. After it was done, signed and ready to go, I again started looking at it. I foresaw some problems in ownership on it and so I sat on it for awhile to see

if—well, just to see what would develop. And things got real peaceful there for awhile and nothing was going on.

"Q. Did you ever tell the Thomsons that you did not file it?

"A. No, I—no, I—I made that mistake there. I didn't tell them that."

The above took place in the first part of 1974. The accused finally filed a complaint in January 1976. From late January to late February 1976, the accused negotiated with the attorney for one of the defendants to settle the case. This proposed settlement was rejected by the Thomsons in no uncertain terms. The Thomsons' letter of rejection also instructed the accused to collect on the default judgment that the Thomsons thought the accused had obtained. As discussed above, the accused testified he did not tell the Thomsons that default judgment had not been taken.

After the Thomsons rejected the settlement, the parties prepared for trial. On January 14, 1977, the attorneys took Mr. Thomson's deposition. When they finished, one of the defense attorneys proposed a settlement. This settlement broke down when one of the defense attorneys refused to agree to pay a share of Thomsons' costs. Thomson left, saying, " 'See you in court,' or something like that."

Thereafter, although Thomson never gave the accused the authority to make a reduced settlement, the accused reached a settlement with the recalcitrant defense attorney pursuant to which the defense attorney's client would pay $50 (instead of $150) to Thomson for attorney fees. The accused prepared a letter to his clients outlining this settlement, but they did not receive the letter. The accused took no other steps to see that his clients knew of the settlement. The defense attorneys never sent the attorney fees that had been agreed on. The accused testified:

"* * * I assumed that I would be getting the money basically right after I received a copy of the letter from

[defense counsel] on about [January] 18th, and that's why I put it in my file, waiting for the money. The money never came.

"Q. Why didn't you notify them, your clients, then that they would not have to go to trial? Because you have said basically that they didn't know——
"A. That's right.

"Q. —whether or not there was a settlement.
"A. I put the file in my filing cabinet. I took it off the docket. What I was waiting for was the money. And basically between January 18th and the February 3d call I forgot about it. The money didn't come, so I forgot about it, and that's where I really messed up."

The Thomsons appeared at the courthouse on the day scheduled for trial. They were told that the case had been settled. They then filed a complaint with the Bar, leading to this proceeding.

The Bar's complaint charged the accused with the following: failing to file the original action for trespass but falsely representing to his clients that he had done so; falsely representing to the defense attorney that he had authority to settle for less than the Thomsons' full expenses; and failing to inform his clients that he had settled the case.

■ The foregoing discussion shows that all these charges were true, with the modification that the accused's false representations were the result of his failure to correct false impressions rather than a result of active misrepresentation. The accused's misconduct caused his clients loss of time, annoyance, embarrassment, and possible prejudice to their case.[1]

---

[1] From the limited facts we have, it appears that there was no basis for the Thomsons' claim that they owned the road and that the defendants would have been entitled to reformation of the deeds.

The accused is guilty of violating ORS 9.480(4)[2] and DR 1-102-(A).[3]

The Trial Board recommended that the accused receive a public reprimand and that he be placed on probation for one year.[4] The Review Board recommended increasing the penalty by suspending the accused for three months.

We are of the opinion that the accused's misconduct, discussed above, requires that accused be suspended from the practice of law for a period of 60 days from the entry of the mandate herein. This opinion will serve as a public reprimand.

The Oregon State Bar is awarded judgment against accused for its costs and disbursements.

---

[2] ORS 9.480(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *.

"(4) He is guilty of wilful deceit or misconduct in his profession * * *.

"* * * * *."

[3] DR 1-102-(A)(4) provides:

"(A)  A lawyer shall not:

"* * * * *.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"* * * * *."

[4] ORS 9.525 provides that the Trial Board "shall file with the executive director written decision on the proceedings, recommending either the dismissal of the complaint or the disbarment, suspension or public reprimand of the attorney. * * *."