Argued and submitted September 3, the accused is suspended from the practice of law for four months December 31, 1992

In re Complaint as to the Conduct of

## Corey B. SMITH,
*Accused.*

## (OSB 89-62; SC S38714)

843 P2d 449

Martha M. Hicks, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause for the Oregon State Bar. Susan K. Roedl, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, filed the briefs for the Oregon State Bar.

Christopher R. Hardman, of Holmes, Folawn & Rickles, Portland, argued the cause and filed the brief for the accused.

PER CURIAM

## PER CURIAM

A trial panel of the Disciplinary Board concluded that the accused violated Disciplinary Rule (DR) 1-102(A)(3)[1] (conduct involving dishonesty, fraud, deceit, or misrepresentation). The accused does not challenge that conclusion. The trial panel suspended the accused from the practice of law for 30 days but ordered that the suspension be stayed pending a probationary period of not more than 18 months during which the accused was required to complete a law school ethics course. The Oregon State Bar seeks this court's *de novo* review of the recommended sanction under ORS 9.536[2] and Rules of Procedure (BR) 10.1,[3] requesting a suspension of at least four months.

We accept, on *de novo* review, the facts found by the trial panel. The accused was an employee associate of the Salem law firm of Gatti, Gatti, Maier, Smith & Associates (GGMS) from 1984 until March 1988, at which time he left to open a new Salem law firm, Garlock, Smith & Associates (GSA), with another lawyer. Both firms handled workers' compensation and personal injury matters.

---

[1] DR 1-102 provides, in part:

"(A) It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[2] ORS 9.536 provides, in part:

"(1) Upon the conclusion of a hearing, the disciplinary board shall file with the State Court Administrator a written decision in the matter. If the decision of the disciplinary board * * * determines that the accused attorney should be disciplined by way of reprimand or suspension from the practice of law up to a period of 60 days, the bar * * * may seek review by the Supreme Court. Such review shall be a matter of right upon the request of either party.

"* * * * *

"(3) When a matter is before the Supreme Court for review, the court shall consider the matter de novo and may adopt, modify or reject the decision of the disciplinary board in whole or in part and thereupon enter an appropriate order."

[3] BR 10.1 provides, in part:

"Upon the conclusion of a disciplinary hearing, the trial panel * * * shall file its written opinion * * *. If the decision of the trial panel * * * determines that the accused shall be disciplined by reprimand or suspension from the practice of law not to exceed 60 days, the Bar or the accused may seek review of the matter by the Supreme Court."

During the two and one-half months preceding his departure from GGMS, the accused met 31 clients in his office and had them sign individual retainer agreements.[4] Following an earlier attempt by the accused to make such personal fee arrangements, GGMS partners had warned the accused to use only retainer agreements providing for representation by the GGMS firm. The accused did not open GGMS files for any of the 31 new clients, although he did mail form letters to the clients on GGMS letterhead.

When the accused left GGMS, he took with him the files relating to the 31 new clients as well as files relating to 50 to 75 other cases.[5] The accused's secretary left GGMS with the accused. She opened GSA files for the 31 clients immediately after the new firm opened.

The accused thereupon sent a letter to the 31 clients, the text of which follows:

"We are pleased to announce the opening of our new law offices under the name Garlock, Smith & Associates.

"We continue to emphasize workers' compensation and personal injury cases and look forward to our continued good relationships.

"For questions and problems please call * * *. As always, my legal assistant, Lisa, will be available to assist you if I am in court when you call.

"I look forward to hearing from you soon."

The accused also sent letters to insurance companies, opposing counsel, medical providers, and workers' compensation referees involved in the 31 matters notifying them of his new address and stating that "we have changed the name and address of our law firm."

GGMS filed several civil actions against the accused and obtained a court restraining order. Only then did the accused send letters to the 31 clients advising them that he had left GGMS and offering them a choice whether to be represented by GGMS or GSA. The trial panel concluded, and

---

[4] The agreements provided, "I hereby retain COREY B. SMITH and associates in connection with my [legal matters]."

[5] The accused testified that he would have taken more client files except that GGMS partners had the locks changed.

we agree, that "before the 31 new clients signed the individual retainer agreements, the Accused anticipated leaving GGMS; that he intended to keep these clients as his own if and when he left GGMS; and that he therefore consciously kept the 31 new clients out of the GGMS file system." That clearly was conduct involving dishonesty, fraud, deceit, or misrepresentation as prohibited by DR 1-102(A)(3). The early letters from the accused to the 31 clients included misrepresentations to the clients. The letters from the accused to opposing counsel, insurance companies, medical providers, and workers' compensation referees included misrepresentations to the public. The surreptitious handling of the client files was dishonest and deceitful toward GGMS.

As a guideline for determining an appropriate sanction for the accused's misconduct, we consider the American Bar Association's Standards for Imposing Lawyer Sanctions (1986) (ABA Standards). *In re Dinerman*, 314 Or 308, 317, 840 P2d 50 (1992). Factors to be weighed in imposing a sanction include: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

In this case, the accused's dishonesty, deceit, and misrepresentation violated a duty to his clients, as well as a duty to the public and to his former firm. He acknowledges that his conduct was intentional. Although there was no actual injury to his clients or to the public, the potential for injury was great. His months-long failure to set up client files could have harmed his clients; it could well have resulted in missed deadlines or lost documents. His clients also could have been harmed by the limitation upon their opportunity to decide whether to stay with the GGMS law firm, to go with the accused to his new law firm, or to make another choice. Partners of the GGMS firm also were exposed to potential harm by the failure of the accused to let the firm know whom he was representing while he practiced there; they could have been exposed to professional liability claims for errors of the accused in matters about which they had no knowledge.

In the absence of aggravating or mitigating circumstances, the ABA Standards recommend suspension in a case in which "a lawyer knowingly deceives a client, and causes

injury or potential injury to the client." ABA Standard 4.62. The ABA Standards also recommend suspension when a lawyer knowingly violates a duty owed to the profession, as the accused has done, and "causes injury or potential injury to a client, the public, or the legal system." ABA Standard 7.2. Finally, the ABA Standards recommend a reprimand in cases in which a lawyer's personal integrity is compromised by knowing "conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." ABA Standard 5.13.

Using the foregoing ABA Standards as guidelines, we conclude, first, that the accused should be suspended from the practice of law. We next consider the effect of aggravating and mitigating factors to determine the appropriate length of suspension. *See* BR 6.1(a)(iii) (authorizing suspensions for periods from 30 days to three years).

Mitigating factors we apply are that the accused has a reputation for good character, ABA Standard 9.32(g), and that he has no prior disciplinary record, ABA Standard 9.32(a). We do not find sufficient evidence in the record to support application of two additional mitigating factors urged by the accused, namely, remorse and cooperation in disciplinary proceedings.

Aggravating factors applicable to this case include a dishonest or selfish motive, a pattern of misconduct, and substantial experience (more than five years) in the practice of law. ABA Standard 9.22(b), (c), and (i).

The public rightfully expects lawyers to conduct their daily affairs with integrity. The conduct of the accused fell far short of that expectation. He plotted to take for himself the economic fruits of legal business that he knew belonged to his employer. His scheme exposed his clients and his firm to substantial risks. His arrogant and selfish conduct dishonors the profession and engenders public disdain. As this court noted in this regard many years ago:

> "No one who is admitted into the legal profession may be permitted to sully or destroy the right and need of the public to impose absolute confidence in the integrity of a lawyer. Literally thousands of personal and business transactions of unknowing people must be and are entrusted to the hands of

some lawyer. Money, property and matters of personal confidence are daily entrusted to the integrity of the individual lawyer. In almost all such instances no bond or security, other than integrity, is required to assure the protection or performance of the trust. No member of the Bar need consider long wherein his duty lies. True, the rules of professional conduct may fill many pages; the opinions interpreting some of the rules, many volumes. But in the more basic conduct he is called upon to perform, any lawyer knows the simple rules that he must cling to: Simple straightforward honesty and absolute good faith. No less will suffice." *In re Pennington*, 220 Or 343, 347, 348 P2d 774 (1960).

Although there is no explicit rule requiring lawyers to be candid and fair with their partners or employers, such an obligation is implicit in the prohibition of DR 1-102(A)(3) against dishonesty, fraud, deceit, or misrepresentation. Moreover, such conduct is a violation of the duty of loyalty owed by a lawyer to his or her firm based on their contractual or agency relationship.[6]

We believe that the real and potential harm to the public is great when lawyers attempt to take economic rights from their own firms (as did the accused here): A breach of integrity like this one merits a severe sanction. *See* ABA Standard 1.1 ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged * * * their professional duties to clients, the public, the legal system, and the legal profession.").

In other cases where lawyers have violated DR 1-102(A)(3) as part of an intentional scheme, this court has imposed suspensions of up to four months' duration. In the recent case of *In re Magar*, 312 Or 139, 817 P2d 289 (1991), this court suspended a lawyer from the practice of law for 60 days when he endorsed a draft with another's name despite his knowledge that the person whose name he signed did not wish him to do so. In *In re Fuller*, 284 Or 273, 586 P2d 1111 (1978), this court imposed a 60-day suspension when a lawyer failed to correct false impressions that his clients had about

---

[6] *See* OSB Legal Ethics Op No 1991-70 and The Ethical Oregon Lawyer (Oregon CLE 1991) § 16.18 for discussions of the duty that a lawyer leaving one law firm for another firm owes to the departed firm regarding clients.

his handling of their case. In *In re Hiller*, 298 Or 526, 694 P2d 540 (1985), this court imposed a four-month suspension when two lawyers attempting to help a client collect on a promissory note arranged to transfer for one dollar the client's interest in certain real property to their secretary in order to trigger a condition in the note requiring payment upon sale of the property.

For the reasons noted above, the misconduct in this case was at least as serious as that in *In re Hiller, supra*. The Bar has recommended at least the same sanction, suspension from the practice of law for a period of four months.

By way of mitigation, the accused points out that nearly five years have passed since the misconduct described herein. *See* ABA Standard 9.32(i) (delay in disciplinary proceedings is a mitigating factor that may be considered in imposing sanction). There being no evidence of the cause for the delay in disciplinary proceedings, we decline to reduce the penalty because of that delay. However, we do recognize that the delay has given the accused an opportunity to develop an additional record of good conduct, which we do weigh in favor of the accused. We note also that the disciplinary record of the accused was unblemished before the misconduct. Nevertheless, the magnitude of the scheme, the devious methods employed by the accused to execute it, and its potential for harm were sufficiently serious that we agree with the Bar that a four-month suspension is warranted.

The accused is suspended from the practice of law for a period of four months commencing on the effective date of this decision.