Submitted on the record January 26, without briefing or oral argument, accused is
disbarred June 10, 1993

In re Complaint as to the Conduct of

Diane W. SPIES,
*Accused.*

(OSB 89-57; 90-90; 90-117; 90-118; 91-38;
91-176; 91-177; SC S38996)

852 P2d 831

PER CURIAM

## PER CURIAM

■    In this disciplinary case, we review *de novo* the decision of a trial panel of the Disciplinary Board to disbar the accused. ORS 9.536;[1] BR 10.6.[2]

Over a two-year period beginning in the fall of 1989, numerous complaints were filed with the Oregon State Bar regarding the conduct of the accused, an experienced land use lawyer with no prior disciplinary record. Several complaints were lodged by clients, two by judges, one by opposing counsel, and one by the State Lawyers Assistance Committee (SLAC).

The accused repeatedly met the Bar's attempts to investigate the accusations leveled by her clients and colleagues with empty promises of cooperation and elaborate, evasive maneuvers. The SLAC approached the accused about the possibility that the misconduct alleged in the complaints was related to an alcohol abuse problem, but she denied that possibility and consistently resisted evaluation or assistance. Finally, the Bar filed a formal complaint against the accused, eventually charging her with violating 17 different disciplinary rules in seven separate matters. Shortly thereafter, in response to the Bar's petition and without protest by the accused, this court suspended the accused from the practice of law during the pendency of the disciplinary proceedings. BR 3.1.

The accused answered the Bar's first complaint, but, soon thereafter, her lawyers withdrew from representing her and she ceased communicating with representatives of the Bar. The accused did not answer the Bar's amended or second

---

[1] ORS 9.536 provides, in part:

"(2) If the decision of the disciplinary board is * * * to disbar the accused attorney, the matter shall be reviewed by the Supreme Court. The procedure on review shall be as provided in the rules of procedure.

"(3) When a matter is before the Supreme Court for review, the court shall consider the matter de novo and may adopt, modify or reject the decision of the disciplinary board in whole or in part and thereupon enter an appropriate order."

[2] Bar Rule of Procedure 10.6 provides, in part:

"The court shall consider each matter de novo upon the record and may adopt, modify or reject the decision of the trial panel * * * in whole or in part and thereupon enter an appropriate order."

amended complaint, nor did she answer the third amended complaint, upon which this proceeding is based. She did not appear for either of two scheduled depositions. She did not appear in person or by counsel at the hearing before the trial panel. Nevertheless, we conclude from facts presented in the record that the accused was timely served and had actual notice of the third amended complaint and of the trial panel proceedings.

After the presentation of evidence, the trial panel found the accused guilty of each charge and determined that the accused should be disbarred. The accused failed to file a petition or brief in this court challenging the trial panel's determination. The Bar waived the right to appear, and the matter was submitted on the record without oral argument. After review of the record, we find the accused guilty as charged.

The misconduct of the accused demonstrates a steady disintegration of integrity and competence, along with an escalation of appallingly poor judgment. The trial panel opinion in this matter was thorough and incisive; it reflected a concerted effort to consider all available mitigating evidence despite the absence of the accused from the proceedings. Our independent review of the evidence supports the trial panel's conclusions.

We turn now to an analysis of each claim of the formal complaint.[3]

## I. ROBY DISSOLUTION MATTER

Although the accused was a land use lawyer with little or no experience in domestic relations practice, she agreed in April 1986 to represent former clients, the Robys, in an uncontested dissolution of marriage. Because of the repeated failure of the accused to file timely, accurate, and complete dissolution documents, the dissolution was delayed for three and one-half years. The accused told her clients that

---

[3] Although we measure the conduct of the accused against disciplinary rules in effect at the time of the alleged misconduct, we refer throughout this opinion to the present version of the disciplinary rules where they do not vary substantially in text from their predecessors.

the court was responsible for the delay. After the wife complained to the Bar and the Bar launched an investigation, the accused lied to and evaded the Bar's investigators.

We agree with the trial panel that this course of conduct involved dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102(A)(3).[4] We also agree with the trial panel that the accused violated DR 6-101(B)[5] in this matter "through repeated failures to respond to client contacts, repeated errors, and unnecessary delays, and by delegating responsibility to assistants whom she failed to supervise adequately." Finally, we agree that the accused violated DR 6-101(A)[6] by representing a client in a matter outside her area of expertise without acquiring adequate knowledge or skill.

## II. COOK MATTER

Cook retained the accused and the then-husband and partner of the accused on a contract matter in 1983. Dissatisfied with the large fee and with the quality of legal representation, Cook complained to the Bar. In response, the accused waived the fee except for costs. Shortly thereafter, in early 1985, Cook asked the accused to send to her the file and its contents. Over the next five years, Cook made several telephone requests for the file, but the accused did not comply with those requests until after Cook complained to the Bar again in 1990. The failure earlier to return the file was inadequately explained.

We agree with the trial panel that the accused's continued failure over a period of several years to return

---

[4] DR 1-102 provides, in part:

"(A)  It is professional misconduct for a lawyer to:

"* * * * *

"(3)  Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[5] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

[6] DR 6-101(A) provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Cook's file violated DR 9-101(B)(4).[7] *See In re Arbuckle*, 308 Or 135, 138, 775 P2d 832 (1989) (unless lawyer is exercising valid lien rights in client's property, client is entitled to return of property upon demand).

## III. GOLDSTEIN FEE MATTER

In July 1989, Goldstein asked the accused to represent him in a real estate transaction. They agreed by telephone, in a conversation later memorialized in a letter from Goldstein to the accused, that the fee of the accused would be $200 per hour, but that the representation would take not more than one hour. Goldstein sent the accused a $2,000 retainer to cover attorney fees and potential costs of his transaction. The accused billed Goldstein $1,140, stating that she had worked 5.7 hours on his case and had prepared a written agreement that neither Goldstein, nor the accused's legal assistant, nor the brokers involved could recall or produce.

Although Goldstein disputed the fee and repeatedly asked for itemization, the accused did not respond to her client's letters or telephone calls. She later disbursed funds to herself from the trust account reserved for Goldstein with knowledge that Goldstein had filed a fee arbitration petition with the Bar and that the dispute was pending. Goldstein took the fee dispute matter to small claims court where he won a judgment that the accused promptly paid.

To pay the judgment, the accused wrote a check from her office account to her trust account, then another check from her trust account to the client. Both checks cleared without incident. The trial panel found that the accused failed to preserve the identity of client funds as required by DR 9-101(A).[8] We agree.

---

[7] DR 9-101 provides, in part:

"(B) A lawyer shall:

"* * * * *

"(4) Promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive. * * *"

[8] At the time of the misconduct, DR 9-101(A) provided, in part:

"All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited and maintained in one or more identifiable trust

We also agree with the trial panel that, in the Goldstein matter, the accused violated DR 2-106(A) (charging a clearly excessive fee), DR 1-102(A)(3) (misrepresentation to the Bar about alleged preparation of a written document), and DR 9-101(A)(2) (withdrawal of disputed funds from her trust account).

## IV. REPRESENTED PARTY MATTER

The accused represented a plaintiff in a land use case in Klamath Falls. Michael Spencer represented the defendant, Klamath County Board of Commissioners. The accused personally communicated with a county commissioner about the case, after which Spencer warned her that the commissioners were represented and that she should not communicate with them about the litigation. Three months later, Spencer complained to the Bar again. The accused had twice, since his warning, communicated with persons in the offices of the commissioners regarding documents and had relayed questions through one staff member to a commissioner while the accused waited on the telephone.

As Spencer correctly warned the accused, communicating with a represented party about the subject of litigation is forbidden. *See In re Hedrick*, 312 Or 442, 822 P2d 1187 (1991) (lawyer may not escape responsibility for communicating with represented party even if no harm was caused). The accused violated DR 7-104(A)(1).[9]

accounts in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein * * *."

There are exceptions to this rule, none of which applies here.

[9] DR 7-104 provides, in part:

"(A) During the course of the lawyer's representation of a client, a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation, or on directly related subjects with a person the lawyer knows to be represented by a lawyer on that subject, or on directly related subjects * * *[.]"

There are exceptions to this rule, none of which applies here.

## V. STATE LAWYERS
## ASSISTANCE COMMITTEE

In early 1990, the State Professional Responsibility Board referred the accused to the SLAC to determine whether the SLAC could help the accused with problems in her practice. The SLAC contacted the accused and asked her to obtain a drug/alcohol abuse evaluation. In April 1990, the accused consulted a doctor, but that doctor could not evaluate her for drug or alcohol abuse because she "avoided any disclosure as to her * * * usage" and was otherwise unco-operative. For six months, SLAC members continued to contact the accused, asking her to obtain a complete outpatient evaluation, sign a release, and meet with a SLAC representative. She finally participated in the first of two phases of an evaluation, but, by the January 15, 1991, deadline, had not completed the evaluation or explained her failure to do so. In February 1991, the SLAC referred the case back to the Bar for noncooperation.

The accused violated DR 1-103(F).[10] *See In re Chandler*, 306 Or 422, 760 P2d 243 (1988) (noncooperation with SLAC is violation of DR 1-103(F)).

## VI. STULL TAX MATTER

In a complaint initiated by the judge of the Oregon Tax Court, it came to the attention of the Bar that the accused, in behalf of her client, Stull, negligently caused dismissal of her client's appeal of a property tax matter. The accused had misfiled an appeal, failed to enclose a filing fee and, then, on refiling, missed the appeal deadline. She similarly had failed to pay filing fees or file appropriately an

---

[10] DR 1-103(F) provides, in part:

"(F) A lawyer who is the subject of a complaint or referral to the State Lawyers Assistance Committee shall, subject to the exercise of any applicable right or privilege, cooperate with the committee and its designees, including:

"* * * * *

"(3) Participating in interviews with the committee or its designees; and

"(4) Participating in and complying with a remedial program established by the committee or its designees."

The accused makes no defense of this charge on the basis of "any applicable right or privilege."

appeal from the Tax Court to the Supreme Court, causing her client's appeal also to be dismissed from this court.

There was more to the story, as the Bar's investigation revealed. Because of a conflicting meeting, the accused asked for a continuance on the day before her client's appeal was scheduled to be heard by the Department of Revenue (DOR). The request was denied by the hearings officer because the accused had had two months' notice of the hearing; the accused then informed the hearings officer that "a man" would be handling the matter. On the day of the hearing, the accused asked her law clerk, a certified law student, to handle the telephone hearing, assuring him that he would need to do no more than ask for a continuance. She did not tell him that she had been denied a continuance or that the hearing would be on the merits. The student, who was not prepared to represent the client, was denied a continuance; the client received an adverse ruling.

As in the Roby dissolution matter, discussed above, the accused violated DR 6-101(A) by failing to provide competent representation. By failing to prepare for the DOR hearing or to comply timely with statutory deadlines, the accused also violated DR 6-101(B) ("A lawyer shall not neglect a legal matter entrusted to the lawyer"). Finally, the accused violated both DR 7-101(A)(1) and (A)(2)[11] by failing zealously to pursue the property tax appeal in her client's behalf.

## VII.  KLAMATH COUNTY CIRCUIT COURT MATTER

Following a complaint by a Klamath County Circuit Court judge, the Bar investigated the conduct of the accused toward the court in the accused's representation of the same land use case discussed above in Part III. The misrepresentations of the accused to the court were so numerous and so egregious that the judge recused himself from the case before filing the Bar complaint.

---

[11] DR 7-101 provides, in part:

"(A)  A lawyer shall not intentionally:

"(1)  Fail to seek the lawful objectives of the lawyer's client through reasonably available means permitted by law and these disciplinary rules * * *.

"(2)  Fail to carry out a contract of employment entered into with a client for professional services * * *."

First, in February 1991, the accused asked for a continuance, because she claimed that the notice she received from the court stated the wrong date. All parties received identical computer-generated notices; the accused never produced the supposedly erroneous notice. Several weeks later, the accused told the judge's judicial assistant that opposing counsel in the case had agreed that the judge should sign a settlement order prepared by the accused. Opposing counsel had not so agreed.

Finally, the accused sent to the court, by facsimile transmission, a motion to dismiss with a certificate stating she had mailed a copy to the opposing lawyer. Neither the court nor the opposing lawyer received a hard copy of the motion, but a telephone hearing on the motion was set nonetheless. Four days before the hearing, the accused told the judge's judicial assistant that she "personally, personally, personally" had just spoken to the opposing lawyer, who had agreed to participate in the hearing. The accused had left word at the opposing lawyer's office but had not spoken to him personally. At the telephone hearing, a transcript of which is part of this record, the judge confronted the accused, who restated her lies.

The accused violated DR 1-102(A)(3)[12] in four instances: (1) by lying to court staff in an attempt to get a continuance; (2) by lying to court staff to get approval of a contested settlement agreement; (3) by falsely certifying that she had mailed the motion to dismiss; and (4) by lying about having discussed the matter with opposing counsel personally.

The described conduct of the accused disrupted a court on each occasion enumerated above and clearly was prejudicial to the administration of justice, in violation of DR 1-102(A)(4).[13]

---

[12] *See* note 3, *supra.*

[13] DR 1-102 provides, in part:

"(A) It is professional misconduct for a lawyer to:

"* * * * *

"(4) Engage in conduct that is prejudicial to the administration of justice[.]"

By engaging in wilful deceit in the course of representing a client, the accused also violated DR 7-102(A)(5)[14] and ORS 9.460(2) ("An attorney shall * * * never seek to mislead the court or jury by any artifice or false statement of law or fact"). Finally, the accused violated the obligation of truthfulness in ORS 9.527.[15]

## SANCTION

The conduct of the accused has become increasingly irresponsible. As the trial panel noted:

"Several former employees testified that the Accused frequently failed to provide much direction or supervision and was frequently out of the office for unknown reasons. At those times her staff were unable to locate her. These absences and lack of direction and the Accused's other misconduct in these various cases constitute an escalating pattern of wilfully violating the disciplinary rules in utter disregard, if not contempt, for the Accused's clients, for the judicial system, for the profession, and apparently even for herself and her career.

"We find that the Bar complied with our request to search its files diligently and present all possible exculpatory evidence — most of which consists of similar late and or otherwise inadequate responses and excuses to clients and Bar, often including that her mother was dying or her father was ill or injured, and the Accused's repeated claims that she had never received letter after letter and phone message after

---

[14] At the time of the accused's misconduct, DR 7-102 provided, in part:

"(A) In the lawyer's representation of a client, a lawyer shall not:

"* * * * *

"(5) Knowingly make a false statement of law or fact."

DR 7-102(A)(5) has been amended. It now prohibits lawyers from making false statements while representing their own interests, as well.

[15] ORS 9.527 provides, in part:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of willful deceit or misconduct in the legal profession;

"(5) The member is guilty of willful violation of any of the provisions of ORS 9.460 * * *[.]"

The pertinent portion of ORS 9.460 is set out in the text above.

phone message. These excuses also follow an escalating pattern, which ends with the Accused effectively dropping out of sight. No one involved in this proceeding has seen or talked with her or been able to serve her since March 1992; she fails to claim mail or return calls. She failed to appear on the Bar's motion to suspend her pending disciplinary proceedings."

■    In determining proper sanctions to impose on lawyers, we look to the ABA Standards for Imposing Lawyer Sanctions (1986) (ABA Standards). *In re Smith*, 315 Or 260, 843 P2d 449 (1992). Those standards consider four factors: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

■    In this case, we disbar the accused based on the aggregate conduct described herein. She violated duties to her clients, to the public, to the legal system, and to the legal profession. ABA Standards 5, 6, and 7. She intentionally misled clients, Bar representatives, and court staff for her own purposes. There was actual injury to her clients Roby (delay in ability to remarry) and Goldstein (paying an excessive fee) and, perhaps, to her clients Stull (a bungled tax appeal, the merits of which are unknown) and Cook (lack of access to her file). There also was both actual and potential injury to the public, to the legal system, and to the legal profession in the Klamath County matters.

There are a number of aggravating factors, particularly: dishonest or selfish motive, ABA Standard 9.22(b); a pattern of misconduct, ABA Standard 9.22(c); multiple offenses, ABA Standard 9.22(d); bad faith obstruction of disciplinary proceedings, ABA Standard 9.22(e); refusal to acknowledge wrongful nature of her conduct, ABA Standard 9.22(g); and substantial experience in the practice of law, ABA Standard 9.22(i). The only mitigating factor shown by the record is the lack of any prior disciplinary record, ABA Standard 9.32(a).[16]

---

[16] There are suggestions in this record that the accused suffered from some sort of impairment. The record does not establish any such impairment, however. *See In re Hawkins*, 305 Or 319, 751 P2d 780 (1988) (when accused lawyer failed to defend himself in disciplinary proceeding, court declined to consider mitigating factors he

Accordingly, the accused is disbarred.

---

might have presented). Moreover, the accused's course of misconduct here is so extensive that, even assuming that some impairment were established, we still would regard disbarment as necessary.