Argued and submitted May 6, accused is suspended from the practice of law for a period of four months commencing on the effective date of this decision July 22, 1993

In re Complaint as to the Conduct of

# Richard H. BUSBY,
*Accused.*

## (OSB 90-53; SC S39712)

855 P2d 156

Argued and submitted May 6, 1993.

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the briefs on behalf of the Oregon State Bar.

Thomas E. Cooney, of Cooney & Crew, P.C., Portland, argued the cause and filed the brief on behalf of the accused.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged the accused with violating Disciplinary Rule (DR) 1-102(A)(3) (conduct involving dishonesty, fraud, deceit, or misrepresentation)[1] and ORS 9.527(4) (willful deceit or misconduct in the legal profession).[2] A trial panel of the Disciplinary Board found that the accused violated DR 1-102((A)(3), but made no finding on the ORS 9.527(4) charge. The trial panel imposed a public reprimand. The Bar petitioned for review, arguing that the accused's conduct also violated ORS 9.527(4) and that a greater sanction is warranted. We review *de novo*. ORS 9.536(3);[3] Bar Rule of Procedure (BR) 10.6.[4] The Bar has the burden of establishing disciplinary violations by clear and convincing evidence. BR 5.2.

The material facts are almost all undisputed. On January 30, 1986, the accused entered into an "of counsel" agreement with Green & Thompson, P.C. (G&T), a firm that specializes in tax matters. The accused was to provide litigation services for G&T's clients, as well as representing clients of his own. G&T was to provide the accused with office space, equipment, support staff, and billing services. The agreement required the accused to pay G&T a minimum monthly amount or a percentage of his monthly revenue, whichever was greater.

---

[1] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[2] ORS 9.527(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that * * * [t]he member is guilty of willful deceit or misconduct in the legal profession[.]"

[3] ORS 9.536(3) provides:

"When a matter is before the Supreme Court for review, the court shall consider the matter de novo and may adopt, modify or reject the decision of the disciplinary board in whole or in part and thereupon enter an appropriate order."

[4] BR 10.6 provides in part:

"The court shall consider each matter de novo upon the record and may adopt, modify or reject the decision of the trial panel * * * in whole or in part and thereupon enter an appropriate order."

The accused soon became dissatisfied with what he perceived to be G&T's failure to collect the firm's outstanding bills aggressively enough, thereby depriving the accused of fees due him from G&T clients. The accused also was dissatisfied with the quality of the secretarial support that he received from G&T. For two months in late 1986, due to problems with a computer billing system, none of the accused's bills went out.

At trial, the accused testified that he "decided that [he] was going to accumulate some funds so that [he] could transition into a sole practice." To accomplish that goal, the accused underreported to G&T fees paid directly to him by one of his clients, Gibralter Savings (Gibralter). The accused arranged for Gibralter to mail its payments to his home address. The underreporting continued for a period of several months. At the same time, however, the accused reported to G&T the amount of time that he billed to Gibralter. When asked by G&T's office administrator about the increasing balance apparently unpaid by Gibralter, the accused answered that he would talk to the client. He did not talk to Gibralter, however, because he knew that Gibralter's payments actually were current. Later, Gibralter contacted the accused to inquire about the increasing amount shown as past due on its account. The accused told Gibralter that G&T's billing system was "screwed up" and that Gibralter needed to pay only the amount shown as current.

Eventually, G&T's office administrator contacted Gibralter about its apparent delinquency. Gibralter responded that it had been making all payments in a timely manner. When confronted by G&T, the accused admitted that he had been underreporting payments received from Gibralter. In a settlement between G&T and the accused in June 1987, the accused agreed to pay G&T $11,049.34, the amount that they agreed was G&T's share of those payments by Gibralter that the accused underreported to G&T.

At the hearing before the trial panel, the accused testified that he never intended to deprive G&T of its share of any fees received from Gibralter permanently and that he intended to use the money in bargaining with G&T to end the "of counsel" agreement. He testified that his goal was "to offset the amount that [G&T] had not been collecting on the

clients of [G&T] that [he] did work for and the amount that [he] had withheld and reach some sort of settlement with those circumstances." The accused also testified that he suffered during this period from alcoholism, for which he had subsequently received treatment.

As did the trial panel, we find that the accused engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1-102(A)(3). As this court stated recently in *In re Smith*, 315 Or 260, 266, 843 P2d 449 (1992):

> "Although there is no explicit rule requiring lawyers to be candid and fair with their partners or employers, such an obligation is implicit in the prohibition of DR 1-102(A)(3) against dishonesty, fraud, deceit, or misrepresentation. Moreover, such conduct is a violation of the duty of loyalty owed by a lawyer to his or her firm based on their contractual or agency relationship."

We conclude that the accused is also guilty of "willful deceit or misconduct in the legal profession," in violation of ORS 9.527(4). Not only did the accused make affirmative misrepresentations to G&T's office administrator and to Gibralter relating to the income that he was withholding from G&T, but the withholding of the income was itself dishonest and deceitful conduct.

In determining the appropriate sanction, this court looks to the American Bar Association's Standards for Imposing Lawyer Sanctions (1986) (ABA Standards). *See, e.g., In re Taylor*, 316 Or 431, 435, 851 P2d 1138 (1993) (using ABA Standards for guidance in determining sanction). Under those standards, factors to be considered in imposing a sanction include: "(a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

In this case, by his dishonest conduct and deceitful misrepresentations, the accused violated duties owed to G&T, to his client, Gibralter, and to the public. The accused's conduct was intentional. Although Gibralter suffered no actual injury, the accused acknowledges that his conduct created a potential for injury to his client. There was the potential that G&T would initiate action against Gibralter

based on G&T's understanding that Gibralter was seriously delinquent in its payments due G&T.

Apart from aggravating or mitigating circumstances, the ABA Standards indicate that "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." ABA Standard 4.62. Likewise, the ABA Standards recommend suspension "when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." ABA Standard 7.2. On the other hand, the ABA Standards suggest a reprimand when a lawyer knowingly engages in conduct "that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." ABA Standard 5.13.

Aggravating factors present in this case include: (1) a dishonest or selfish motive; (2) a pattern of misconduct; and (3) substantial experience in the practice of law. ABA Standard 9.22(b), (c), and (i). Mitigating factors include: (1) absence of a prior disciplinary record; (2) personal or emotional problems; (3) full and free disclosure to the Disciplinary Board and a cooperative attitude toward proceedings; (4) a good reputation; (5) physical or mental disability or impairment; and (6) interim rehabilitation. ABA Standard 9.32(a), (c), (e), (g), (h), and (j).

In the recent case of *In re Smith, supra,* 315 Or at 266-67, this court reviewed the sanctions imposed in several prior cases involving violations of DR 1-102(A)(3):

"In other cases where lawyers have violated DR 1-102 (A)(3) as part of an intentional scheme, this court has imposed suspensions of up to four months' duration. In the recent case of *In re Magar,* 312 Or 139, 817 P2d 289 (1991), this court suspended a lawyer from the practice of law for 60 days when he endorsed a draft with another's name despite his knowledge that the person whose name he signed did not wish him to do so. In *In re Fuller,* 284 Or 273, 586 P2d 1111 (1978), this court imposed a 60-day suspension when a lawyer failed to correct false impressions that his clients had about his handling of their case. In *In re Hiller,* 298 Or 526, 694 P2d 540 (1985), this court imposed a four-month suspension when two lawyers attempting to help a client collect on a promissory note arranged to transfer for one dollar the

client's interest in certain real property to their secretary in order to trigger a condition in the note requiring payment upon sale of the property."

In *In re Smith, supra*, this court imposed a four-month suspension when a lawyer plotted to take 31 clients away from his employer, exposing his clients and his firm to substantial risks. *Id.* at 267.

In this case, the misconduct was as serious as the misconduct in the foregoing cases. The accused attempts to minimize the seriousness of his misconduct by characterizing the entire matter as a "business dispute." The accused's dissatisfaction with G&T's performance of its obligations under the "of counsel" agreement, however, did not justify his dishonest behavior. As this court stated in *In re Magar, supra*, 312 Or at 142:

> "Even when dealing for him or herself, and not for any client, a lawyer is one of those 'who profess the law, [and thereby] profess honest and dispassionate resolution of conflicts.' *In re Hopp*, 291 Or 697, 702, 634 P2d 238 (1981). Self-help of this kind was utterly inconsistent with those professions." (Brackets in original.)

As in *In re Smith, supra*, we conclude that a four-month suspension is the appropriate sanction.

The accused is suspended from the practice of law for a period of four months commencing on the effective date of this decision.