Argued and submitted November 2, accused suspended for 90 days
December 21, 1995

# In re Complaint as to the Conduct of
## ANNE MARIE MELMON,
### *Accused.*

(OSB 92-134; SC S42112)

908 P2d 822

Anne Marie Melmon, Tigard, argued the cause and filed the brief *in propria persona.*

Lia Saroyan, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) filed a formal complaint against the accused, alleging in six causes of complaint that the accused had violated Rules of Professional Conduct (DR) 5-105(E),[1] DR 1-102-(A)(3),[2] and DR 7-102(A)(5)[3] several times. A trial panel of the Disciplinary Board found the accused guilty of three violations of DR 5-105(E) and not guilty of the remaining charges. The trial panel ordered that the accused be suspended for 90 days.

■■ Under Rules of Procedure (BR) 10.1, review by this court is automatic, because the suspension ordered by the trial panel is for more than 60 days. We review the record *de novo*. ORS 9.536(3); BR 10.6. As did the trial panel, we find the accused guilty of three violations of DR 5-105(E). In addition, we find the accused guilty of a violation of DR 1-102(A)(3). We suspend the accused from the practice of law for 90 days.

■ With respect to the three violations of DR 5-105(E) found by the trial panel, the accused does not contest either the trial panel's findings or its conclusion that she violated the cited rule. Rather, the accused challenges only the severity of the trial panel's sanction. A recitation of the facts respecting those three instances of misconduct would not benefit bench or bar. For present purposes, it suffices to say that the accused represented multiple clients in each of three different business transactions, when the clients' interests required either full disclosure under DR 10-101 or separate representation of

---

[1] DR 5-105(E) provides that, "[e]xcept as provided in DR 5-105(F), a lawyer shall not represent multiple current clients in any matters when such representation would result in an actual or likely conflict." DR 5-105(F) provides that representation of multiple current clients is allowed "in instances otherwise prohibited by DR 5-105(E) when such representation would not result in an actual conflict and when each client consents to the multiple representation after full disclosure." Under DR 10-101(B), "full disclosure" is defined to mean "an explanation sufficient to apprise the recipient of the potential adverse impact on the recipient, of the matter to which the recipient is asked to consent" and, when a conflict of interest may be present, to "include a recommendation that the recipient seek independent legal advice to determine if consent should be given," which advice "shall be contemporaneously confirmed in writing."

[2] DR 1-102(A)(3) provides that "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] DR 7-102(A)(5) provides that, "[i]n the lawyer's representation of a client * * *, a lawyer shall not [k]nowingly make a false statement of law or fact."

each client under DR 5-105(E). On *de novo* review, we find the accused guilty of those same three instances of misconduct. Before turning to a discussion of the appropriate sanction, however, we consider the position taken by the Bar.

■　Among other things, the Bar seeks a finding by this court (contrary to the decision of the trial panel) that the accused is guilty of violating DR 1-102(A)(3) as alleged in the Sixth Cause of Complaint. We agree with the Bar's position and find the following facts, by clear and convincing evidence, from the record.

The accused began to represent Andrew Sigmund and one of his corporations, Alpine Forest Products, Inc. (Alpine), in 1987. In 1988, Sigmund told the accused that he was interested in buying a helicopter for Alpine. He obtained funds to make the purchase and deposited those funds in the accused's trust account for later disbursement to the seller of the helicopter. Sigmund told the accused that, because insurance rates would be more favorable if the registered owner of the helicopter were an individual, "rated" pilot, he did not want Alpine listed as the buyer. On September 7, 1988, Sigmund gave the seller a check for the price of the helicopter, written from the trust account of the accused. In exchange, the seller issued a receipt and an aircraft bill of sale showing the buyer to be the accused, as "Trustee" for Alpine.

On September 8, 1988, Sigmund and a person named Darrell Jones met with the accused. Jones was a "rated" pilot, who was licensed to operate helicopters. Sigmund brought with him the aircraft bill of sale prepared by the seller and told the accused that he could get less expensive insurance if Jones were listed as the helicopter's owner. The next day, the accused prepared two new aircraft bills of sale. One listed the accused as seller and Jones as buyer, and the other listed Jones as seller and Alpine as buyer. The accused signed and dated the first bill of sale. Jones signed the second bill of sale, leaving it undated. The accused retained the undated bill of sale and gave the first bill of sale (showing Jones as buyer), which was intended to be filed with the Federal Aviation Administration (FAA), to Sigmund. Documents showing Jones to be the owner of the helicopter were submitted to the insurance company.

In the Sixth Cause of Complaint, the Bar alleged that the accused had violated DR 1-102(A)(3) when, on or about September 9, 1988, she either created or helped to create an aircraft bill of sale that falsely stated that Jones had bought the helicopter from the accused. We find the accused guilty of that charge.

On September 8, 1988, the accused knew that the helicopter was being purchased solely with funds belonging to Sigmund or Alpine. Before the purchase, Sigmund told the accused that insurance rates would be significantly lower if the helicopter were owned by a "rated" pilot, instead of a corporation or an individual who was not a "rated" pilot. At Sigmund's direction, on September 8, 1988, the accused created two aircraft bills of sale. One of them reflected the true buyer (although not the true seller), while the other one — which was the only one to be submitted to the insurance company and the FAA — did not reflect either the true seller or the true buyer. On September 8, 1988, the accused knew that Jones had no ownership interest in the helicopter and that the only reason for his inclusion on the bill of sale was to gain a more favorable insurance premium. The accused's conduct, in assisting Sigmund to create the untrue bill of sale, violated DR 1-102(A)(3), because it involved dishonesty and misrepresentation.

The accused makes two arguments as to why her conduct did not violate DR 1-102(A)(3). First, she asserts that she understood that there was an informal arrangement between Jones and Sigmund, under which Jones would acquire an ownership interest in the helicopter through the performance of services for Alpine. Assuming that understanding to be correct, it does not negate a finding that the accused violated the cited rule. Her knowledge of the possibility that Jones would acquire an ownership interest in the helicopter later, for services not yet rendered, only underscores her knowledge that Jones had no such interest on September 8, 1988.

Second, the accused asserts that she did not violate DR 1-102(A)(3), because the insurance agent was aware of the facts and did not object. Assuming that assertion to be true, it does not avail the accused. The addition of another person to the list of those who knew of the dishonesty and misrepresentation does not make the representation honest or true.

■ We turn next to the question of sanction. In this connection, the accused argues that the trial panel erred in denying her motion to reconvene for reconsideration of the sanction. The accused had a full opportunity to present evidence and arguments to the trial panel while it was convened, and she did so. In the circumstances, the trial panel did not err in denying the motion to reconvene.

When deciding on a sanction, this court turns for guidance to the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). We consider the duty violated, the mental state of the accused, the actual or potential injury caused by the misconduct, and the presence of any aggravating or mitigating factors. ABA Standard 3.0.

Here, by acting with conflicts of interest, the accused violated her duty of loyalty to clients. ABA Standards at 5. In addition, the accused violated her duty to the general public and to the legal system by creating a false document. *See* ABA Standards at 40 (discussing duties violated by creation of false evidence).

With respect to the conflicts of interest, the accused acted knowingly. " 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. With respect to the false bill of sale, the accused acted intentionally. " 'Intent' is the conscious objective or purpose to accomplish a particular result." *Ibid.* The particular desired result was the obtaining of less expensive insurance on the helicopter than would have been the case had the insurance company known the truth.

The next factor to consider is injury or potential injury. Whenever a lawyer represents multiple clients in the face of a conflict of interest, there is at least the potential for injury. We have not detailed the conflicts of interest in this opinion, but those conflicts caused actual injury in the form of litigation among the various clients of the accused and between the accused and her clients. As to the misrepresentation, there was potential injury to the insurance company.[4]

---

[4] In fact, the accused and her client acted on incorrect information; the insurance premium was not higher at that time if the owner of the helicopter was not an individual, "rated" pilot.

Before considering aggravating and mitigating factors, the ABA Standards suggest that a suspension is appropriate for a conflict of interest. ABA Standard 4.32. Generally, a misrepresentation likewise ought to result in a suspension. ABA Standard 6.12.

Three aggravating factors apply. First, the accused exhibited a pattern of misconduct with respect to conflicts of interest, over a substantial period of time (1988 to 1990). ABA Standard 9.22(c). Second, the accused is guilty of multiple offenses. ABA Standard 9.22(d). Third, as noted by the trial panel, the accused "changed her story," for example, at one time denying that she had prepared or assisted in preparing the bills of sale for the helicopter, while at another time testifying that she had done so. *See In re Boyer*, 295 Or 624, 630, 669 P2d 326 (1993) (an accused's lack of credibility before a trial panel is a proper consideration in fixing the sanction for misconduct).

In mitigation, four factors apply. The accused has no prior disciplinary record, was not motivated by personal gain, was a relatively inexperienced practitioner when she engaged in the misconduct, and cooperated in this proceeding. ABA Standards 9.32(a), (b), (e), and (f).

In the circumstances, Oregon case law suggests that a period of suspension is appropriate. In *In re Magar*, 312 Or 139, 817 P2d 289 (1991), this court suspended the accused for 60 days for a single violation of DR 1-102(A)(3) that was similar to the present one. Additionally, this court has suspended lawyers for egregious or multiple conflicts of interest. *See, e.g., In re Hockett*, 303 Or 150, 164, 734 P2d 877 (1987) (in that case, violation of conflicts rule alone would have justified a 30-day suspension). We conclude that, in the present case, the appropriate sanction is a 90-day suspension.

The accused is suspended from the practice of law for 90 days.