Argued and submitted May 8, accused suspended from the practice of law for 120 days June 7, 1996

In re Complaint as to the Conduct of

ROSEMARY E. UNREIN,
*Accused.*

(OSB 93-161; SC S42485)

917 P2d 1022

Martha H. Hicks, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

Paul R. J. Connolly, of Donaldson, Albert, Tweet, Connolly, Hanna & Muniz, LLP, Salem, argued the cause and filed the brief for the accused.

PER CURIAM

## ‍PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar charges that the accused violated DR 1-102(A)(3)[1] when she applied for and received four unemployment insurance benefit checks at a time when she knew that she was ineligible for unemployment benefits. A trial panel of the Disciplinary Board found the accused guilty and suspended her for 30 days.

The Bar sought review, contending that the sanction is inadequate and seeking a suspension of six months or more. The accused, in this court as below, does not contest her guilt but contends that the 30-day suspension is appropriate. On *de novo* review, ORS 9.536(3), we find the accused guilty of violating DR 1-102(A)(3) and suspend her for 120 days.

The material facts are, as noted, undisputed. During each of four weeks in March and April of 1992, the accused applied for and received unemployment compensation benefits of $176. In order to receive those benefits, the accused was required to fill out a form in which she certified that she had not worked for the week for which the benefits were paid. Although the accused so certified, four times, she in fact had worked part time as a lawyer in a law office (for which she received compensation of $10 per hour) during each of those four weeks.

We conclude, as did the trial panel, that the accused violated DR 1-102(A)(3) by submitting claims for unemployment insurance benefits to which she knew she was not entitled and by misrepresenting her employment status to the Employment Division so as to receive benefits. We turn next to the issue of sanction.

In determining the appropriate sanction, this court looks to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). Under the ABA Standards, there are four factors to consider: "(a) the duty violated; (b) the lawyer's mental state; (c) the actual

---

[1] DR 1-102(A)(3) provides that "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."

or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

The accused violated her duty to maintain personal integrity. That is a fundamental duty that a lawyer owes to the public. *See* ABA Standards at 36 (discussing sanctions for lawyers who violate their duty to the public under ABA Standards 5.1 to 5.24).

The accused acted intentionally, the most culpable mental state under the ABA Standards. A lawyer acts intentionally when she has "the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. Here, the conscious objective of the accused was to obtain unemployment benefits for which she was ineligible.

The acts of the accused caused actual harm. The Employment Division paid the accused substantial benefits to which she was not entitled. Also, the agency was put to the expense and inconvenience of a fraud investigation and hearings to establish the amount of benefits that the accused had obtained wrongfully.

Finally, we consider aggravating and mitigating factors.

With respect to aggravating factors, there was a pattern of misconduct, ABA Standard 9.22(c); the accused made four separate false statements, at different times. In addition, the accused was not completely candid in the present proceedings. ABA Standard 9.22(f). Initially she told the Bar's investigator that she had mistakenly applied for benefits, rather than admitting that the statements were false, as she later did.

With respect to mitigating factors, the accused has no prior disciplinary record. ABA Standard 9.32(a). That factor is especially significant because four years have passed since the events which gave rise to the disciplinary charges, during which there have been no other complaints against the accused. *See* ABA Standard 9.32(i) (delay in disciplinary proceedings is a mitigating factor). Additionally, the accused is remorseful. ABA Standard 9.32(l).

No two disciplinary cases are alike, but *In re Busby*, 317 Or 213, 855 P2d 156 (1993), is similar to the present one. In that case, the accused violated DR 1-102(A)(3) and ORS 9.527(4), which prohibits willful deceit or misconduct in the legal profession. The accused in that case withheld income from the firm to which he was "of counsel" and made misrepresentations to the office administrator, as a result of which he received more fees than he was entitled to. 317 Or at 215-16. As here, the court found more mitigating factors than aggravating factors. *Id.* at 218. This court imposed a four-month suspension after reviewing some of the earlier cases:

"In the recent case of *In re Smith*, [315 Or 260, 266-67, 843 P2d 449 (1992),] this court reviewed the sanctions imposed in several prior cases involving violations of DR 1-102(A)(3):

" 'In other cases where lawyers have violated DR 1-102(A)(3) as part of an intentional scheme, this court has imposed suspensions of up to four months' duration. In the recent case of *In re Magar*, 312 Or 139, 817 P2d 289 (1991), this court suspended a lawyer from the practice of law for 60 days when he endorsed a draft with another's name despite his knowledge that the person whose name he signed did not wish him to do so. In *In re Fuller*, 284 Or 273, 586 P2d 1111 (1978), this court imposed a 60-day suspension when a lawyer failed to correct false impressions that his clients had about his handling of their case. In *In re Hiller*, 298 Or 526, 694 P2d 540 (1985), this court imposed a four-month suspension when two lawyers attempting to help a client collect on a promissory note arranged to transfer for one dollar the client's interest in certain real property to their secretary in order to trigger a condition in the note requiring payment upon sale of the property.'

"In *In re Smith*, *supra*, this court imposed a four-month suspension when a lawyer plotted to take 31 clients away from his employer, exposing his clients and his firm to substantial risks. *Id.* at 267." *Busby*, 317 Or at 218-19.

The accused argues that the most analogous case is *In re Dinerman*, 314 Or 308, 840 P2d 50 (1992), in which this court imposed a 63-day suspension. Dinerman had made false representations in a promissory note and security agreement in order to obtain a straw loan for a client. 314 Or

at 314. That conduct violated *former* DR 1-102(A)(3) (conduct involving moral turpitude), *former* DR 1-102(A)(4) (dishonesty, fraud, deceit, or misrepresentation), and DR 7-102(A)(7) (counseling or assisting client in fraudulent conduct).

A key distinction between *Dinerman* and *Busby* is the presence in the latter case of a pattern of conduct, as distinct from a one-time event. Both *Busby* and *Smith*, on which it relied, involved patterns of conduct. *See also In re Melmon*, 322 Or 380, 908 P2d 822 (1995) (accused made one misrepresentation and engaged in a pattern of conflicts of interest; 90-day suspension imposed). Here, too, the accused engaged in an intentional pattern of conduct involving four separate occasions of dishonesty. In the circumstances, we conclude that a 120-day suspension is the appropriate sanction.

The accused is suspended from the practice of law for 120 days.