Submitted on the record and brief filed on behalf of the Oregon State Bar September 16, 1996, accused disbarred January 16, reconsideration denied May 20, 1997

In re Complaint as to the Conduct of

## JULIE ANN LEONHARDT,
*Accused.*

(OSB 94-36; SC S41228)

930 P2d 844

Jeffrey D. Sapiro, Lake Oswego, filed a brief for the Oregon State Bar.

No appearance by or for the accused.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

PER CURIAM

## PER CURIAM

In this lawyer discipline case, a trial panel of the Disciplinary Board found the accused, a former District Attorney of Clatsop County, guilty of multiple violations of statutes and disciplinary rules. The trial panel determined that the appropriate sanction is disbarment. That determination made the trial panel decision subject to mandatory review by this court. ORS 9.536(2); BR 10.1.[1] On review, we find the accused guilty of acts that require her disbarment.

## I. FINDINGS OF FACT

We find the following facts to have been proved by clear and convincing evidence:

The accused was a deputy district attorney in Multnomah County from September 1987, when she was admitted to the practice of law, until February 1989, when she entered private practice. She was elected Clatsop County District Attorney in May 1992 and took office in January 1993.

As Clatsop County District Attorney, the accused had certain statutory duties, including advising the Clatsop County Grand Jury. ORS 132.340; ORS 8.670. In addition, it was important for the accused to seek to maintain a good working relationship between her office and the Clatsop County law enforcement agencies, including the City of Astoria Police Department.

### A. *Thurber and Stowell Indictments*

In the summer of 1993, the accused informed the Clatsop County Grand Jury of allegations that two Astoria police officers, Thurber and Stowell, had engaged in misconduct. The grand jury heard no evidence regarding those allegations, however; the only information that the grand jury

---

[1] The accused did not file a petition for review or an opening brief in this court. The Oregon State Bar (the Bar) therefore filed a petition seeking to have the trial panel's opinion and proposed sanction adopted by this court. *See* BR 10.5 and ORAP 11.25(3)(a) (describing procedure). Pursuant to ORAP 11.25(3), the Bar waived oral argument and submitted this matter on the record and its brief.

received came from the accused. She reported that an individual named "Scott Thompson" (or "Ron Scott Thompson"), a transient in the Astoria area, had contacted her and told her that the officers had attempted to enlist him in the sale of drugs.[2] Thompson also allegedly reported to the accused that he had heard from other sources that the officers had been involved in drug cases in which not all seized contraband had been reported.

If any further inquiry was made into those allegations, it was made by the accused alone. She sought no input or assistance from any police agency. She did not involve or talk to other lawyers within her office or district attorneys in other counties, the Attorney General's office, or any other law enforcement agency, with the possible exception of the Drug Enforcement Administration (DEA). As to the DEA, the accused testified that she called its Houston office and confirmed that Thompson was a DEA informant. She claims that she made that call from a public telephone in Portland. The Bar claims that no such call ever was made. The trial panel, relying on the opportunity to see and hear the accused's testimony, found the accused to be "totally lacking in credibility." It therefore gave no weight to her testimony.

On *de novo* review, we also reject the accused's testimony that she spoke to a DEA agent. In addition to the inherent improbability of her story, we give significant weight to the trial panel's opportunity to assess the accused's credibility during her testimony.

---

[2] The only evidence of the existence of Thompson and his alleged conversations with the accused comes from her testimony before the trial panel, supported by two handwritten exhibits that the accused introduced before the trial panel that she claimed had been written by Thompson. The trial panel stated in its opinion that it "strongly doubts that the Accused ever met with anyone named Ron Scott Thompson. We believe it is more likely than not that the entire adventure was a figment of the Accused's imagination." The trial panel did not act on those doubts, however. It explained:

"The non-existence of Thompson has not been alleged by the Bar, and it is not necessary to determine if he exists or if he ever spoke to the Accused in order to resolve this case. We will, therefore, make no finding of fact one way or the other on this issue. We will * * * assume that the Accused did meet with Thompson and receive the information she claims to have received from him."

This court likewise will assume, for purposes of this opinion, that the accused actually was told by someone named Scott Thompson that the officers were involved in illegal activities.

After reporting Thompson's allegations to the grand jury, the accused drafted indictments charging the officers with tampering with physical evidence and criminal conspiracy. The grand jury returned those indictments.

Under Oregon law, an indictment must contain the names of witnesses examined before the grand jury that returned the indictment. ORS 132.580(1). Under certain relatively narrow circumstances, personal testimony before the grand jury is not required. For example, written reports from certain expert witnesses may be received in evidence in a grand jury proceeding. ORS 132.320(2). In addition, an affidavit of a witness who is unable to appear in person before a grand jury may be received, with the prior approval of a circuit court judge. ORS 132.320(3).

In the case of the indictments of Thurber and Stowell, no witnesses appeared before the grand jury, no written reports were submitted to the grand jury, and no affidavits were provided to the grand jury. The only information provided to the grand jury about the existence of Thompson and his allegations came from unsworn statements of the accused.

When the accused presented the indictments to the grand jury foreperson for signature on August 12, 1993, there were no witnesses listed. After the indictments were signed, the accused caused her staff to type in, under the witness portion of each document, "Scott Thompson by affidavit." The grand jury was unaware of that alteration by the accused. The effect of the alteration was to make it appear that the indictments were based on a written, sworn statement from a witness, Scott Thompson.

Word of the indictments of the officers spread quickly throughout Astoria. Several people questioned the accused regarding the background investigation leading to the indictments. Inquiries came from lawyers retained to represent the officers, from a lawyer who represented the City of Astoria, from staff members within the accused's own office, from law enforcement officials, from the media, and from others. In response to some of those inquiries, the accused stated that the DEA had investigated the case. To others, the accused said that the indictments were based on

information from a DEA agent. In fact, no federal law enforcement agency was involved in any aspect of any investigation leading to the indictments.

Stowell was arraigned in Clatsop County Circuit Court on August 17, 1993. During that initial hearing, counsel for Stowell challenged the indictment on the ground that no prior court approval had been given for any witness named Scott Thompson to appear before the grand jury by affidavit. The court inquired of the accused on the issue of Thompson's appearance. In response, the accused stated:

> "Your honor, when the indictment was prepared it was anticipated that Mr. Thompson would be appearing only by affidavit, and that application would be made for that. *Mr. Thompson did appear in person.* The line which indicates that Mr. Thompson appeared only by affidavit is incorrect, and the state will be moving to amend the indictment to reflect that Mr. Thompson did appear as a witness before the grand jury."

(Emphasis added.) Because of the accused's statement, the court did not dismiss the indictments at that time. In fact, Scott Thompson did not appear before the grand jury, in person or otherwise. Neither did the accused contemplate at the time that the indictments were prepared that she would obtain prior court approval for Thompson's appearance by affidavit.

The accused testified that she never intended to imply to the court that Thompson had *testified* before the grand jury. She claims that, when she said "Mr. Thompson did appear in person" and "Mr. Thompson did appear as a witness before the grand jury," she meant only that Mr. Thompson had "appeared" at the courthouse, but had left without testifying when he found that there were police officers there. The accused claims that her statement was ambiguous and that, when properly understood, it was true. The trial panel disbelieved the accused's testimony in this regard, as do we.

There is no question either that the accused made the misstatement or that it was false. As did the trial panel, we find by clear and convincing evidence that the statement was made with the deliberate intention to deceive the court

and counsel for Thurber and Stowell. We further find that the accused temporarily succeeded, in that the court did not dismiss the indictments at that time. The accused knew that she had acted improperly in first obtaining an indictment without evidence and then in altering that indictment before filing it. The statement to the court was part of a purposeful effort to conceal her illegal and unethical conduct. That coverup has continued through the accused's criminal trial and this disciplinary proceeding.

Within days after the officers' arraignment, members of the Clatsop County District Attorney's office other than the accused conceded that the indictments were not well-founded. The indictments were dismissed voluntarily, with apologies to the officers. The accused had agreed to the dismissals; the apologies were added by two of the accused's deputies, without the accused's prior knowledge, in an attempt to heal the problem created by the indictments.

As a result of her alteration of the indictments against the officers, the accused was charged, tried, and found guilty of four felony counts of forgery in the first degree, ORS 165.013(1)(d), and two misdemeanor counts of tampering with public records, ORS 162.305(1). This court suspended the accused from the practice of law on May 24, 1994, following those criminal convictions. ORS 9.527(2); BR 3.4(d).

B. *Overby Investigation*

While working as a deputy district attorney in Multnomah County, the accused met and began to date Andrew Overby. Overby was a convicted felon who began to serve a sentence in a federal prison while dating the accused. One of the accused's supervisors at the Multnomah County District Attorney's office counseled her against dating a felon. The accused left her employment with Multnomah County shortly thereafter.

The accused and Overby were engaged and living together in Astoria when the accused took office as Clatsop County District Attorney in January 1993. Overby was on federal probation at the time. During her first month in office, the accused learned that police officers were questioning Overby as a potential suspect in a reported hit-and-run

motor vehicle accident. The accused made inquiries of the law enforcement agencies involved and complained to the Gearhart Chief of Police regarding the conduct of an investigating officer from that jurisdiction who had detained Overby in a traffic stop. Ultimately, the hit-and-run matter was referred to the Columbia County District Attorney, Martin Sells, who declined to pursue any charges. Sells did correspond with the accused, however, and cautioned her against becoming involved in any matter in which Overby was a suspect.

On August 2, 1993, Overby again was stopped, this time by the Astoria police, in a traffic matter. He was cited for reckless driving. One of the officers involved in the traffic stop was Thurber, who would be indicted later that month. Reckless driving is a traffic crime, conviction of which can have adverse consequences to an individual who, like Overby, is on probation. Overby complained to the accused about the citation. The accused had discussions with the charging officer (who was not Thurber), that officer's supervisor, and the Astoria Police Chief concerning the matter. The accused asked them for "professional courtesy" to reduce or dismiss the charge against Overby. Her request was rebuffed.

At the hearing before the trial panel, the accused denied that there was anything inappropriate in her actions. She claimed that she did not know that conviction for a new crime could affect Overby's probation. The trial panel found, by clear and convincing evidence—as do we—that this protestation by the accused is disingenuous. Any prosecutor would know that, if Overby were to receive a new criminal conviction while on probation, it could affect his probation negatively.

Based on the actions that the accused took on behalf of Overby regarding the August 1993 reckless driving charge, the accused was charged with, tried, and convicted of the misdemeanor offense of official misconduct in the first degree, ORS 162.415(1)(b).

## II.   THE CHARGES

The Formal Complaint filed against the accused contains five causes of complaint.

The first cause of complaint alleges that the accused has been convicted of felonies and misdemeanors involving moral turpitude and therefore is subject to discipline under ORS 9.527(2).[3] The accused admits the convictions and admits that she is subject to discipline for the felonies. She contends, however, that the misdemeanors do not involve moral turpitude and, consequently, should not be considered. We find it unnecessary to address that issue because, as we explain below, the accused's felony convictions and other disciplinary rule violations are sufficient to justify the sanction that we impose in this case.

The accused is subject to discipline under ORS 9.527(2) for conviction for the four felonies.

The second cause of complaint alleges that the conduct underlying the accused's criminal convictions was illegal and therefore was in violation of DR 1-102(A)(2),[4] and DR 7-102(A)(8),[5] ORS 9.460(1),[6] and ORS 9.527(4).[7] The accused

---

[3] ORS 9.527(2) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"The member has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state, or is punishable by death or imprisonment under the laws of the United States, in any of which cases the record of the conviction shall be conclusive evidence."

[4] DR 1-102(A)(2) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law."

[5] DR 7-102(A)(8) provides:

"In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not:

"* * * * *

"(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

[6] ORS 9.460(1) provides:

"An attorney shall:

"(1) Support the Constitution and laws of the United States and of this state."

[7] ORS 9.527(4) provides:

denies the conduct. We have found by clear and convincing evidence that all the alleged conduct occurred as charged. The accused is guilty of violating the rules and statutes cited.

The third cause of complaint alleges that the accused made misrepresentations to the court during the appearance on August 17, 1993, and that that conduct violated DR 1-102(A)(3),[8] DR 1-102(A)(4),[9] DR 7-102(A)(3),[10] DR 7-102(A)(5),[11] ORS 9.460(2),[12] and ORS 9.527(4). The accused admits making the statement, but contends that the court misunderstood her and that she never intended to deceive.

---

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of willful deceit or misconduct in the legal profession."

[8] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[9] DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to

"* * * * *

"(4) Engage in conduct that is prejudicial to the administration of justice."

[10] DR 7-102(A)(3) provides:

"In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not:

"* * * * *

"(3) Conceal or knowingly fail to disclose that which the lawyer is required by law to reveal."

[11] DR 7-102(A)(5) provides:

"In the lawyer's representation of a client or in representing the lawyer's own interest, a lawyer shall not:

"* * * * *

"(5) Knowingly make a false statement of law or fact."

[12] ORS 9.460(2) provides:

"An attorney shall:

"* * * * *

"(2) Employ, for the purpose of maintaining the causes confided to the attorney, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact."

We previously have discussed our findings under this allegation. The accused is guilty of violating the cited rules and statutes.

The fourth cause of complaint alleges that the accused made false representations to others, including counsel for Thurber and Stowell, concerning Thompson's connections to the DEA and the accused's efforts to confirm that connection, contrary to DR 1-102(A)(2), DR 1-102(A)(3), and DR 1-102(A)(4), and ORS 9.460(2) and ORS 9.527(4). It also is alleged that the accused made the same misrepresentations during her testimony at her criminal trial. The accused denies that the representations were false. We have found by clear and convincing evidence that the representations were made and were false. We now find that the accused is guilty of violating those rules and statutes.

The fifth cause of complaint essentially alleges that the accused abused the grand jury process by causing the indictment of the two police officers without sufficient evidence and without probable cause, contrary to DR 1-102(A)(4), DR 7-102(A)(1),[13] DR 7-102(A)(2),[14] and DR 7-103(A).[15] The accused denies the allegations. Based on the

---

[13] DR 7-102(A)(1) provides:

"In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the lawyer's client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

[14] DR 7-102(A)(2) provides:

"In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not:

"* * * * *

"(2) Knowingly advance a claim or defense that is unwarranted under existing law except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law."

[15] DR 7-103(A) provides:

"A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when the lawyer knows or it is obvious that the charges are not supported by probable cause."

facts already recited, we find by clear and convincing evidence that the allegations are true. The accused is guilty of violating those rules.

## III. SANCTION

In arriving at the appropriate sanction, we consider the American Bar Association *Model Standards for Imposing Lawyer Sanctions* (1991 ed) (ABA Standards) and Oregon case law. *In re Morin*, 319 Or 547, 564, 878 P2d 393 (1994). The ABA Standards require analysis of the accused's conduct in the light of four factors: (1) the ethical duty violated; (2) the accused's mental state; (3) actual or potential injury; and (4) the existence of aggravating or mitigating circumstances. ABA Standard 3.0.

### A. *Duties Violated.*

The accused failed in her duties as a district attorney. She pursued criminal charges without evidence or probable cause. She falsified public records and then lied about those alterations to lawyers, the court, the public, and her own staff. Those actions interfered with the orderly administration of justice in Clatsop County. She improperly attempted to use her influence to alter the course of a criminal prosecution of her fiancé.

### B. *Mental State.*

The ABA Standards define "intent" as "the conscious objective or purpose to accomplish a particular result." ABA Standards at 17. We find with respect to all the acts involved that the accused acted with an intentional state of mind.

### C. *Injury.*

The injury to the accused police officers, to the criminal justice system, and to the public's confidence in the legal process and its public officials was actual and substantial. Legal challenges to the indictments were made, and a significant expenditure of public time, effort, and money was required, to reverse the consequences of the accused's misconduct and to bring her to justice.

## D. *Aggravating and Mitigating Factors.*

The Bar identifies as aggravating factors the accused's dishonest or selfish motive, a pattern of misconduct, multiple offenses, and refusal to acknowledge wrong. ABA Standards 9.22(b), (c), (d), and (g). We agree that those aggravating factors are present. The only mitigating factors present here are a lack of any prior disciplinary record and the imposition of other penalties or sanctions. ABA Standards 9.32(a) and (k).

Having considered the relevant factors, we now examine the sanctions suggested by the ABA Standards. The Bar correctly points to the following provisions:

"5.11 Disbarment is generally appropriate when:

"(a)   a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b)   a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

"5.21 Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another, or with the intent to cause serious or potentially serious injury to a party or to the integrity of the legal process."

"6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding."

Application of those guidelines to the conduct of the accused clearly indicates that, under the ABA Standards, the appropriate sanction here is disbarment.

We also examine the conduct of the accused in the light of our prior case law in determining the correct sanction. Generally speaking, Oregon lawyers who have been convicted of serious criminal offenses, or who have engaged in criminal misconduct even without conviction, have been disbarred.[16] Disbarment also has been imposed in some cases when lawyers have lied or made material misrepresentations to a court.[17] Application of the foregoing cases to the conduct of the accused likewise indicates that the appropriate sanction is disbarment.

## IV. CONCLUSION

Given the nature of the accused's felony convictions, her conduct underlying those convictions, her misrepresentations to the court and others, and her abuse of the grand jury process, we conclude that the accused should be disbarred.

The accused is disbarred.

---

[16] *See, e.g., In re Morin*, 319 Or 547, 878 P2d 393 (1994) (theft by deception, solicitation, and false swearing, among other offenses); *In re Taylor*, 316 Or 431, 851 P2d 1138 (1993) (felony drug and tax convictions); *In re Kirkman*, 313 Or 181, 830 P2d 206 (1992) (forgery, false swearing, and bigamy); *In re Martin*, 308 Or 125, 775 P2d 842 (1989) (bribing a witness); *In re Hendricks*, 306 Or 574, 761 P2d 519 (1988) (engaging in fraudulent tax shelter scheme).

[17] *See, e.g., In re Spies*, 316 Or 530, 852 P2d 831 (1993) (disbarment for misrepresentations to the court among other violations); *In re Miller*, 310 Or 731, 801 P2d 814 (1990) (misrepresentations to the court, along with prior record, resulted in disbarment); *In re Hawkins*, 305 Or 319, 751 P2d 780 (1988) (filing false affidavit with probate court resulted in disbarment); *In re Dixson*, 305 Or 83, 750 P2d 157 (1988) (false statements to the court, among other violations, resulted in disbarment).