### The PEOPLE of the State of Colorado, Complainant

v.

### Richard A. CREWS, Respondent.

### No. 05PDJ049.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 6, 2006.

Attorney Regulation. Following a sanctions hearing, the Presiding Disciplinary Judge disbarred Respondent Richard A. Crews (Attorney Registration No. 32472) from the practice of law, effective April 6, 2006. This is a reciprocal discipline action from the State of Oregon. The facts admitted through the entry of default showed Respondent committed multiple criminal acts of forgery by falsely signing adverse parties' signatures on various documents, including an alleged settlement agreement, a notice of appeal and a restraining order, all pertaining to separate legal matters. Respondent further made multiple misrepresentations to his clients regarding the forged documents and failed to pursue his clients' legal matters. Respondent also withdrew from representing a client without taking steps to the extent reasonably practical to protect his client's interest and failed to promptly return his client's property. Finally, Respondent failed to respond to numerous inquiries from the Oregon Office of Disciplinary Counsel regarding his conduct. Respondent also failed to participate or present any mitigating evidence in these proceedings. The admitted facts proved multiple violations of Colo. RPC 1.3, 1.15(b), 1.16(d), 8.1(b), 8.4(b) and 8.4(c) and therefore warrant the imposition of reciprocal discipline under C.R.C.P. 251.21. Accordingly, the Presiding Disciplinary Judge found no adequate basis to depart from the presumptive sanction of disbarment.

### REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.15(b)

On January 5, 2006, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.18(d). KIM E. IKELER appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). RICHARD A. CREWS ("Respondent") did not appear, nor did counsel appear on his behalf. The Court issues the following Report, Decision, and Order Imposing Sanctions.

### I. *ISSUE*

If Regulation Counsel does not seek substantially different discipline, and if the re-

spondent does not challenge an order based on any of the grounds set forth in C.R.C.P. 251.21(d)(1–4), then the Presiding Disciplinary Judge may impose the same discipline imposed by a foreign jurisdiction. Respondent failed to participate in these reciprocal proceedings and the People do not seek substantially different discipline. Is disbarment the appropriate reciprocal discipline under these circumstances?

*SANCTION IMPOSED: ATTORNEY DISBARRED*

## II. PROCEDURAL HISTORY AND BACKGROUND

Respondent failed to file an Answer in these proceedings and the Court granted the People's Motion for Default on October 24, 2005. Upon the entry of default, the Court deems all facts in the Complaint admitted and all rule violations established by clear and convincing evidence. *People v. Richards*, 748 P.2d 341, 346 (Colo.1987).

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted Complaint and the attachments to the Complaint.[1] In summary, the Oregon State Bar ("OSB") filed an Amended Formal Complaint against Respondent on July 23, 2004. OSB alleged the following in their Complaint:

1. Respondent committed a criminal act that adversely reflected on his honesty, trustworthiness, or fitness to practice law;
2. Respondent neglected a legal matter;
3. Respondent failed to fully and truthfully respond to inquiries from an authority empowered to investigate or act upon the conduct of lawyers;
4. Respondent withdrew funds without taking steps to the extent reasonably practical to protect the client's interest; and
5. Respondent failed to promptly return client property.

Respondent never responded to OSB's Amended Formal Complaint. On October 7, 2004, a Trial Panel of Oregon's Disciplinary Board entered a default judgment against

him. On February 25, 2005, the Trial Panel adopted the facts and recommendations set forth in the OSB's Sanctions Memorandum and disbarred Respondent. Respondent did not appeal his Oregon disbarment.

"A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere." Colo. RPC 8.5. A final adjudication in another jurisdiction of misconduct constituting grounds for discipline of an attorney shall, for purposes of proceedings pursuant to these Rules, conclusively establish such misconduct. C.R.C.P. 251.21(a). The adopted facts establish that Respondent violated Colo. RPC 8.4(b) (it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law in other respects), Colo. RPC 8.4(c) (it is professional misconduct for a lawyer to engage in dishonesty, fraud, deceit or misrepresentation), Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect a legal matter entrusted to that lawyer), Colo. RPC 8.1(b) (a lawyer shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority), Colo. RPC 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest), and Colo. RPC 1.15(b) (upon receiving client funds or other property, the lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive).

## III. SANCTIONS

At the conclusion of proceedings brought under C.R.C.P. 251.21, a Hearing Board shall issue a decision imposing the same discipline imposed by the foreign jurisdiction, unless it is determined by the Hearing Board that:

(1) The procedure followed in the foreign jurisdiction did not comport with requirements of due process of law;
(2) The proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Hearing

---

1. The Court attached the Complaint to this Report as Exhibit A.

Board cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction;

(3) The imposition by the Hearing Board of the same discipline as was imposed in the foreign jurisdiction would result in grave injustice; or

(4) The misconduct proved warrants that a substantially different form of discipline be imposed by the Hearing Board.

C.R.C.P. 251.21(d)(1–4). However, if Regulation Counsel does not seek substantially different discipline and if the respondent does not challenge the order based on any of the grounds set forth in (d)(1–4) above, then the Presiding Disciplinary Judge may, without a hearing or Hearing Board, issue a decision imposing the same discipline as imposed by the foreign jurisdiction. C.R.C.P. 251.21(e). The People did not seek a substantially different discipline and Respondent did not challenge the Oregon order. Accordingly, the Court issues this decision imposing the same discipline as imposed by the State of Oregon.

## IV. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. For over three years, Respondent disregarded his duties to his clients and his obligations to the legal profession. The Colorado Rules of Professional Conduct specifically protect the public from lawyers licensed in Colorado but who practice in other jurisdictions. Respondent's failure to participate in these reciprocal proceedings or challenge the order of disbarment from Oregon leaves the Court with no option but to impose the same discipline. Accordingly, the Court concludes disbarment is the appropriate sanction in this case.

## V. ORDER

The Court therefore **ORDERS**:

1. RICHARD A. CREWS, Attorney Registration No. 32472, is **DISBARRED** from the practice of law, effective thirty-one (31) days from the date of this Or-

der, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. RICHARD A. CREWS **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.

### EXHIBIT A

Kim E. Ikeler, # 15590, Assistant Regulation Counsel, John S. Gleason, # 15011, Regulation Counsel, Denver, for Complainant, 600 17th Street, Suite 200–South, Denver, Colorado 80202.

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.21(d) and 251.14, and it is alleged as follows:

#### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on December 8, 2000, and is registered upon the official records of this court, registration no. 32472. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is P.O. Box 19124, Denver, CO 80219. The respondent's registered residence address is 13490 Birch Way, Thornton, CO 80241.

2. Colo. RPC 8.5 provides: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere." C.R.C.P. 251.21(d) provides in pertinent part: "Upon receiving notice that an attorney has been publicly disciplined in another jurisdiction, the Regulation Counsel shall obtain the disciplinary order and prepare and file a complaint against the attorney as provided in C.R.C.P. 251.14."

#### General Allegations

3. On July 23, 2004, the Oregon State Bar ("OSB") filed an Amended Formal Complaint against respondent. OSB charged respondent with having committed a criminal act

that reflected adversely on respondent's honesty, trustworthiness or fitness to practice law, with conduct involving dishonesty or misrepresentation, with neglect of a legal matter, with failing to fully and truthfully to inquiries from an authority empowered to investigate or act upon the conduct of lawyers, with withdrawing without taking steps to the extent reasonably practical to protect a client's interest, and with failure to promptly return client property. A copy of the Amended Formal Complaint is attached as Exhibit 1 to OSB's Sanctions Memorandum, a copy of which is attached hereto as Exhibit A.

4. Respondent failed to respond to OSB's Amended Formal Complaint. Default judgment as to culpability was taken against him. On December 22, 2004, OSB submitted its Sanctions Memorandum (Exhibit A hereto) requesting respondent's disbarment in Oregon based on the allegations of the Amended Formal Complaint.

5. On February 25, 2005, a Trial Panel of Oregon's Disciplinary Board adopted as its findings and conclusions the facts and recommendations set forth in OSB's Sanctions Memorandum. The Trial Panel entered its Opinion that respondent should be disbarred. Respondent did not appeal the Opinion and the time for appeal has now run. As a result, the Opinion is a final order and respondent is disbarred in Oregon.

## CLAIM I

### [Reciprocal Discipline— C.R.C.P. 251.21(d) ]

6. Complainant incorporates paragraphs 3 through 5 above.

7. C.R.C.P. 251.21(a) provides in pertinent part: "Except as otherwise provided in these Rules, a final adjudication in another jurisdiction of misconduct constituting grounds for discipline of an attorney shall, for purposes of proceedings pursuant to these Rules, conclusively establish such misconduct."

8. The Opinion of the Trial Panel of the Oregon Disciplinary Board, adopting the facts and recommendations of OSB, conclusively establishes that respondent violated Colo. RPC 8.4(b) (which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law in other respects), Colo. RPC 8.4(c) (which provides that it is professional misconduct for a lawyer to engage in dishonesty, fraud, deceit or misrepresentation), Colo. RPC 1.3 (which provides that a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect a legal matter entrusted to that lawyer), Colo. RPC 8.1(b) (which provides in pertinent part that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority), Colo. RPC 1.16(d) (which provides in pertinent part that upon termination of a representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest), and Colo. RPC 1.15(b) (which provides in pertinent part that, upon receiving client funds or other property, the lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive).

9. Based on the Opinion of the Trial Panel of the Oregon Disciplinary Board, and the above-listed violations of the Colorado Rules of Professional Conduct, respondent should be disbarred in Colorado.

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; and the respondent be assessed the costs of this proceeding.

/s/  Kim E. Ikeler
Kim E. Ikeler, #15590
Assistant Regulation Counsel
John S. Gleason, #15011
Regulation Counsel
Attorneys for Complainant

### EXHIBIT A

In re:

Complaint as to the Conduct of

RICHARD A. CREWS,

Accused.

Caes Nos. 04-53, 04-54, 04-69, 04-86 & 04-87

## OREGON STATE BAR'S SANCTIONS MEMORANDUM

### INTRODUCTION

· This proceeding is a consolidation of five separate legal matters involving conduct by the Accused over the course of more than three years. On October 7, 2004, the trial panel signed a default order regarding all the matters alleged in the Amended Formal Complaint. (Copy of Amended Formal Compalint is attached as Ex. 1.) As a result of that order, all the allegations in that complaint are deemed true and the trial panel need only decide the sanction to be imposed. Given the nature of the violations, the actual injury sustained as a result of the Accused's conduct and prior case law, the trial panel should disbar the Accused.

### SUMMARY OF FACTS

Even though the facts of the underlying rule violations are deemed true, for the trial panel's convenience, the bar provides the following brief summary of each matter.

### Bost matter (Case No. 04–54)

In February 2000, Gregory Bost (hereinafter "Bost") retained the Accused to pursue claims against James Roads (hereinafter "Roads") for breach of contract, conversion and unlawful trade practices in connection with the restoration of a car. In July 2000, the Accused filed a lawsuit in Oregon on behalf of Bost. That lawsuit was dismissed by the court in January 2001, because the court did not have jurisdiction over Roads who lived and worked in Washington.

After January 2001, the Accused failed to inform Bost that the lawsuit had been dismissed. He also made false representations to Bost suggesting that the lawsuit was still pending and that the parties were moving toward settlement.

In mid–2001, the Accused provided Bost with a copy of an agreement and release purportedly signed by Roads in which Roads agreed to pay Bost $23,000 plus attorneys fees. (Ex. 2) In fact, Roads had not signed that agreement. Instead, the Accused had prepared the agreement and forged Roads's signature on it.[1]

In early 2002, Bost received notice that Roads was asserting a lien on the car in question and would be selling it at a public auction. Thereafter, the Accused falsely informed Bost that Roads could not sell the car because the lawsuit was still pending. In 2002, the Accused also falsely represented to Bost that he had seized and sold property belonging to Roads and was waiting for the sale to be recorded before forwarding the sale proceeds to Bost.

The Accused violated DR 1–102(A)(2) [commit a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness to practice law] when he forged Roads's name to the agreement and release; DR 1–102(A)(3) [conduct involving dishonesty, fraud, deceit or misrepresentation] when he forged Roads's signature on the agreement and release, and when he made multiple misrepresentations to Bost; and DR 6–101(B) [neglect of a legal matter] when he failed to pursue Bost's legal matter. The Accused also violated DR 1–103(C) [failure to respond to bar inquiries] when he did not respond to numerous inquiries from Disciplinary Counsel's Office regarding his conduct in the Bost matter.

### Palmer matter (Case No. 04–53)

The Accused represented Bradley Palmer (hereinafter "Palmer") in a number of different matters.

#### 1. *Claim for wrongful arrest.*

In early 2000, Palmer retained the Accused to represent him in a claim for wrong-

---

[1] In relevant part, ORS 165.013(1)(c) finds that a person commits the crime of forgery in the first degree if, with intent to injure or defraud, a person falsely makes or completes a contract. Forgery in the first degree is a Class C felony. ORS 165.013(3).

ful arrest. The Accused filed a lawsuit in Washington on Palmer's behalf.

The defendants thereafter filed a motion for summary judgment, and the court set the matter for a hearing. A few hours before the scheduled hearing, the Accused falsely informed Palmer that the hearing had been cancelled because the case had been dismissed and the defendants were in default. The Accused also falsely informed Palmer that the defendants had filed a notice of appeal. In fact, the hearing had not been cancelled. The court rescheduled the hearing when the Accused did not appear. Eventually, the court granted the defendants' motion for summary judgment.

Thereafter, the Accused provided Palmer with a copy of the notice of appeal purportedly prepared and signed by the defendants' lawyer. In fact, the defendants' lawyer had not prepared or signed a notice of appeal. Instead, the Accused had prepared the notice of appeal and forged the signature of the defendants' lawyer on it. (Ex. 3)[2]

The Accused violated Washington Rule of Professional Code (hereinafter "RPC") 8.4(b) [engage in criminal conduct reflecting adversely on a lawyer's honestly, trustworthiness or fitness to practice law] and RPC 8.4(c) [conduct involving dishonesty and misrepresentation] when he forged the signature of the defendants' lawyer on the notice of appeal and when he made misrepresentations to Palmer.[3]

### 2. Downey Savings and Loan Association matter.

In early 2003, Palmer retained the Accused to represent him with some problems he was having with his mortgage company, Downey Savings and Loan Association (hereinafter "Downey"). After a number of months the Accused informed Palmer that he

had negotiated an agreement with Downey that would resolve all outstanding issues. The Accused subsequently advised Palmer and his wife to stop making mortgage payments to Downey because Downey had not satisfied the terms of the agreement. In July 2003, the Accused filed a lawsuit in Washington federal court on behalf of the Palmers.

After the lawsuit was filed, Downey threatened to foreclose on the Palmers' property. In response to Palmer's concerns about the foreclosure, the Accused sent him a copy of a restraining order prohibiting Downey from foreclosing that had purportedly been issued and signed by a judge in the Washington lawsuit. In fact, the judge had not issued or signed a restraining order. Instead, the Accused had prepared an order and forged the judge's signature on it. (Ex. 4)[4]

The Accused violated RPC 8.4(b) [engage in criminal conduct reflecting adversely on a lawyer's honestly, trustworthiness or fitness to practice law]; RPC 8.4(c) [conduct involving dishonesty and misrepresentation]; and RPC 8.4(d) [conduct prejudicial to the administration of justice] when he forged the judge's signature on the restraining order and when he falsely led Palmer and Downey's lawyer to believe that.

### 3. Bankruptcy matter.

In mid-January 2004, the Accused recommended to Palmer that he and his wife file for Chapter 7 bankruptcy protection. Palmer informed the Accused that he needed to discuss the matter with the Accused in person before agreeing to that course of action. On January 23, 2004, without authority from Palmer, the Accused filed a Chapter 7 bankruptcy petition in Washington on Palmer's behalf.

On February 2, 2004, Downey filed a motion for relief from the Chapter 7 automatic stay. A hearing to consider that motion was

---

**2.** In relevant part, Washington Revised Code 9A.60.020(1) finds that a person commits the crime of forgery if, with intent to injure or defraud, a person falsely makes or completes a written instrument. Forgery is a Class C felony. WRC 9A.60.020(3).

**3.** Because the Accused's conduct occurred in Washington, Washington's Rules of Professional Conduct should be applied. BR 1.4(b)(1).

**4.** Forging a federal judge's signature is a crime punishable by imprisonment of up to five year. 18 USC § 505. As discussed earlier, forgery is also a crime under the laws of Washington.

scheduled for February 6, 2004. On February 5, 2004, the Accused informed Palmer that he was withdrawing from representing him in the bankruptcy proceeding and would not be appearing at the hearing on February 6, 2004.

The Accused violated RPC 1.15 [withdrawing without taking steps to the extent reasonably practical to protect a client's interest] when he suddenly withdrew from representing Palmer and RPC 8.4(c) [conduct involving dishonesty and misrepresentation] when he filed the bankruptcy proceeding on Palmer's behalf knowing that he was not authorized to do so.

The Accused also violated DR 1-103(C) [failure to respond to bar inquiries] when he did not respond to numerous inquiries from Disciplinary Counsel's Office regarding his conduct in the Palmer matters.

### Snell matter (Case No. 04-69)

In May 2002, David Snell (hereinafter "Snell") retained the Accused to represent him in a claim for wrongful termination. In October 2002, Snell instructed the Accused to file a lawsuit on his behalf and provided the Accused with funds to file the case. Over the course of the next year the Accused failed to pursue Snell's legal matter.

In January 2003, the Accused falsely represented to Snell that he had filed a lawsuit. Between February 2003 and September 2003, the Accused falsely represented to Snell that the lawsuit was moving forward.

The Accused finally filed the lawsuit on Snell's behalf in mid-September 2003, but thereafter failed to pursue Snell's legal matter.

The Accused violated DR 1-102(A)(3) [conduct involving dishonesty, fraud, deceit or misrepresentation] when he made numerous misrepresentations to Snell, and DR 6-101(B) [neglect of a legal matter] when he failed to pursue Snell's legal matter. The Accused also violated DR 1-103(C) [failure to respond to bar inquiries] when he did not respond to numerous inquiries from Disciplinary Counsel's Office regarding his conduct in the Snell matter.

### Durshpek matter (Case No. 04-86)

In April 2003, Serge Durshpek (hereinafter "Durshpek") retained the Accused to represent him in a claim for injuries he sustained in a car accident. Later that same month the Accused filed a lawsuit on Durshpek's behalf.

After July 2003, the Accused failed to pursue Durshpek's legal matter and failed to maintain adequate communications with him.

In February 2004, the court sent a notice to the Accused that Durshpek's lawsuit would be dismissed in mid-March because he had not complied with the rules governing arbitration. The Accused failed to respond to that notice and failed to inform Durshpek that his case was going to be dismissed.

Beginning in early 2004, Durshpek made numerous requests of the Accused for the return of his file. The Accused failed to respond to those requests.

The Accused violated DR 6-101(B) [neglect of a legal matter] when he failed to pursue Durshpek's legal matter and DR 9-101(C)(4) [failure to promptly return client property] when he failed to respond to Durshpek's requests for his file. The Accused also violated DR 1-103(C) [failure to respond to bar inquiries] when he did not respond to numerous inquiries from Disciplinary Counsel's Office regarding his conduct in the Durshpek matter.

### Hannam matter (Case No. 04-87)

In July 2003, Dan Hannam (hereinafter "Hannam") filed a complaint with the bar regarding the Accused's conduct. Thereafter, the Accused violated DR 1-103(C) [failure to respond to bar inquiries] when he did not respond to numerous inquiries from Disciplinary Counsel's Office regarding his conduct in the Hannam matter.

### SANCTION

Oregon law governs the trial panel's sanction analysis, even as to those violations of Washington's Rules of Professional Conduct. In this regard, an Oregon disciplinary proceeding applying the substantive rules of another state is similar to a reciprocal pro-

ceeding under BR 3.5. In a reciprocal proceeding, the court accepts the findings by the other state with regard to the rule violations, but makes an independent sanction determination based upon Oregon precedent. The court applies Oregon law in evaluating the appropriate sanction because the choice of sanction vindicates the judicial authority of Oregon. *In re Devers,* 317 Or. 261, 265, 855 P.2d 617 (1993).

The Oregon Supreme Court refers to the ABA *Standards for Imposing Lawyer Sanctions* ("*Standards*"), in addition to its own case law for guidance in determining the appropriate sanctions for lawyer misconduct. *In re Wyllie IV,* 327 Or. 175, 181, 957 P.2d 1222 (1998).

## A. ABA *Standards.*

The *Standards* establish an analytical framework for determining the appropriate sanction in discipline cases using three factors: the duty violated; the lawyer's mental state; and the actual or potential injury caused by the conduct. Once these factors are analyzed, the court makes a preliminary determination of sanctions, after which it adjusts the sanction, if appropriate, based upon the existence of aggravating or mitigating circumstances.

1. *Duty violated.* The most important ethical duties are those obligations that a lawyer owes to clients. *Standards* at p. 5. In this case, the Accused violated his duty to act with reasonable diligence and promptness in representing clients in two matters (Snell and Durshpek) and his duty to be candid with clients in three matters (Bost, Palmer—wrongful arrest and Downey, and Snell). *Standards* §§ 4.4 and 4.6.

In three instances, the Accused violated duties he owed to the public not to engage in criminal conduct and to maintain his personal integrity. (Bost, Palmer—wrongful arrest and Downey) *Standards* § 5.1.

In one matter (Palmer—bankruptcy matter) the Accused violated his duty to the legal system to avoid conduct prejudicial to the administration of justice. *Standards* § 6.0.

Finally, the Accused violated duties he owed to the profession. In one matter he failed to properly withdraw (Palmer—bankruptcy matter). *Standards* § 7.0. In all five matters he failed to respond to inquiries by Disciplinary Counsel's Office. *Id.*

2. *Mental state.* The most culpable mental state is that of intent when the lawyer acts with the conscious objective our purpose to accomplish a particular result. *Standards* at p. 6. "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. *Id.* "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation. *Id.*

The bar may rely upon the facts alleged in the complaint to establish the mental state of an Accused lawyer. *In re Kluge,* 332 Or. 251, 262, 27 P.3d 102 (2001). To the extent the trial panel has deemed the facts of the Amended Formal Complaint as true, the panel can find the Accused acted with the mental state as they are alleged in that complaint.

The trial panel should find the Accused intentionally forged signatures of Roads in the Bost matter, of the defendants' lawyer in the Palmer wrongful arrest matter, and a federal judge in the Palmer bankruptcy matter.

The trial panel should find that the Accused knowingly made misrepresentations to Bost, Palmer, and Snell. The Accused knew that he had not properly attended to their legal matters, and sought to cover up his conduct by leading them to believe that he was diligently pursuing their claims.

Initially, the Accused negligently failed to pursue legal matters on behalf of Bost, Snell and Durshpek. The Accused conduct became knowing when he was either contacted by his client inquiring about the status of the matter or when he received notices from the court regarding action the court intended to take with respect to those legal matters.

The Accused acted knowingly when he improperly withdrew from representing Palmer in the bankruptcy proceeding just one day before a scheduled hearing. The Accused did not obtain a reset of the hearing, and knew that Palmer was not prepared to represent himself in the matter.

The Accused acted knowingly when he failed to provide Durshpek with his file. Durshpek made numerous requests for the file. The Accused did not respond to any of those requests.

The trial panel should find that the Accused intentionally failed to respond to bar inquiries in all five matters in violation of DR 1–103(C). Letters sent by Disciplinary Counsel's Officer were duly directed and mailed. Oregon Rule of Evidence 311(1)(q) provides that when a letter is duly directed and mailed, a presumption can be made that it was received in the regular course of the mail. The trial panel should conclude that the Accused's failure to respond to and cooperate with the bar was intentional.

3. *Injury.* "Injury" is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. *Standards* at p. 7. Injury can be either actual or potential under the *Standards. In re Williams,* 314 Or. 530, 840 P.2d 1280 (1992).

Bost sustained actual injury. Bost was led to believe that Roads had agreed to compensate him for his losses and that those funds were on their way to him. When Bost discovered that Roads had not made any agreement, and that no funds had been collected Bost had to hire another attorney and pursue Roads again. Because of false representations by the Accused, Bost took no action to protect the car when Roads informed him that he would be selling the car at auction. The car was sold and Bost lost any chance of recovering the car from Roads.

Palmer sustained actual injury. Because of false representations by the Accused, Palmer was led to believe that he had prevailed in the wrongful arrest claim and that the matter was on appeal. In fact, the case had been dismissed on a motion for summary judgment. By the time Palmer discovered what had actually happened, he was unable to appeal that judgment. Palmer incurred additional legal fees in an effort to unravel all of the actions the Accused took on his behalf in the Downey and bankruptcy matters. The Accused's unauthorized filing of the Chapter 7 bankruptcy proceeding damaged Palmer's credit history.

Snell sustained actual injury. Resolution of his legal matter was significantly delayed due to the Accused's misrepresentations and neglect.

Durshpek sustained actual injury. As a result of the Accused's neglect, Durshpek's lawsuit was in danger of being dismissed by the court. Resolution of his legal matter was delayed.

The public and the legal system sustained actual injury. In three instances, the Accused committed forgery. In the Palmer wrongful arrest and bankruptcy matters the Accused used the court system to perpetuate a fraud upon his client and other litigants.

The Accused's failure to cooperate with the bar's investigation of his conduct caused actual harm to both the legal profession and the public because it delayed the bar's investigation and consequently the resolution of the complaints against him. *In re Miles,* 324 Or. 218, 222, 923 P.2d 1219 (1996).

4. *Preliminary analysis under the Standards.* In the absence of aggravating or mitigating circumstances, the following *Standards* apply:

4.41 Disbarment is generally appropriate when:

\*　　\*　　\*　　\*　　\*　　\*

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.61 Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client.

4.62 Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

5.11 Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another, or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

* * * *

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

5. *Aggravating circumstances.* The following aggravating circumstances are present in this case:

a. Dishonest or selfish motive in the Bost, Palmer, and Snell matters. *Standards* § 9.22(b);

b. Pattern of misconduct. In three instances the Accused engaged in forgery in order to cover up his own conduct. In three matters the Accused made numerous misrepresentations to clients in order to cover up his own conduct. *Standards* § 9.22(c);

c. Multiple offenses. *Standards* § 9.22(d); and

d. Substantial experience in the practice of law as the Accused has been a lawyer

in Oregon since 1995. (Ex. 5) *Standards* § 9.22(i).

6. *Mitigating circumstances.* The following mitigating circumstance is present in this case:

a. Absence of a prior disciplinary record. *Standards* § 9.32(a).

Because the aggravating circumstances outweigh the mitigating circumstances, the *Standards* suggest that disbarment is the appropriate sanction.

## B. Oregon Case Law.

The Accused committed forgery, a felony, on three separate occasions, including one instance involving forgery of a federal judge's signature. The court has disbarred lawyers who have committed forgery or similar felony crimes involving dishonesty or misrepresentation. See *In re Sundkvist,* 328 Or. 289, 974 P.2d 206 (1999) [lawyer who committed forgery and theft when he signed his partner's name on firm checks made payable to the lawyer for funds he was not entitled to receive, was disbarred for violating DR 1–102(A)(2), DR 1–102(A)(3), and ORS 9.527(1) ]; *In re Garvey,* 325 Or. 34, 932 P.2d 549 (1997) [lawyer who violated, among other rules, DR 1–102(A)(2) and DR 1–102(A)(3) by engaging in the criminal acts of perjury, false swearing, aiding escape, and supplying contraband in the course of representing a client, was disbarred]; *In re Leonhardt,* 324 Or. 498, 930 P.2d 844 (1997) [lawyer who violated, among other rules, DR 1–102(A)(2) and DR 1–102(A)(3) by engaging in the criminal acts of forgery, tampering with public records, and official misconduct was disbarred]; *In re Kirkman,* 313 Or. 181, 830 P.2d 206 (1982) [lawyer who engaged in forgery, unsworn falsification, and bigamy was disbarred].

The court has also disbarred lawyers who violated a variety of disciplinary rules in a number of matters. In *In re Sousa,* 323 Or. 137, 915 P.2d 408 (1996), a lawyer was disbarred for a variety of disciplinary violations in connection with his handling of four separate matters. As in this case, the violations in *Sousa, supra* ran the entire gambit from neglect to dishonesty and failing to respond in bar investigations. As in this case, there

were many aggravating factors. The court concluded,

"The accused engaged in a continuous pattern of misrepresentations, neglect, failure to act on behalf of his client, and failure to acknowledge obligations and respond to the Bar's investigation. That course of conduct mandates that the accused be disbarred from the practice of law." 323 Or. at 147, 915 P.2d 408.

*See also In re Donovan,* 327 Or. 76, 957 P.2d 575 (1998) [lawyer was disbarred for engaging in a pattern of neglect with respect to client matters, abandoning his practice, and repeatedly failing to cooperate with the bar's inquiries and investigations]; *In re Spies,* 316 Or. 530, 852 P.2d 831 (1993) [lawyer was disbarred for a variety of violations in a number of matters demonstrating a steady disintegration of integrity and competence as well as an escalation of poor judgment]; *In re Sassor,* 299 Or. 720, 705 P.2d 736 (1985) [lawyer was disbarred for engaging in a course of negligent failure to carry out his professional obligations for two years in three separate matters].

## CONCLUSION

For over three years, the Accused disregarded his obligations to his clients, his obligation to be honest, his obligations to the public, and his obligation to respond to complaints about his conduct. The public and the bar have a right to expect a lawyer to take his obligations seriously. The public and the bar deserve to be protected from a lawyer who fails to do so. The trial panel should disbar the Accused.

Respectfully submitted this 22nd day of December, 2004.

OREGON STATE BAR

By: /s/ Stacy J. Hankin
Stacy J. Hankin, OSB No. 86202
Assistant Disciplinary Counsel

### AFFIDAVIT

STATE OF OREGON

ss.

County of Clackamas

I. Stacy J. Hankin, being first duly sworn, depose and say:

1. I am an Assistant Disciplinary Counsel for the Oregon State Bar. I am the attorney primarily responsible for the investigation and prosecution of Richard A. Crews ("the Accused") for violations of the Code of Professional Responsibility and ORS Chapter 9. The statements contained in this affidavit are based on my personal knowledge and my review of the bar's records and files prepared and maintained in the ordinary course of its business.

2. Exhibits 1 is a true copy of the Amended Formal Complaint filed in this matter.

3. Exhibits 2, 3 and 4 are true copies of documents obtained in the course of investigating the Accused's conduct.

4. Exhibit 5 is a hard copy of information contained in the bar's membership database.

Dated this 22nd day of December, 2004.

/s/ Stacy J. Hankin
Stacy J. Hankin

Subscribed and sworn to before me this 22 day of December, 2004.

/s/ Raya J. Levin
Notary Public for the State of Oregon
My commission expires: 4-16-08

### EXHIBIT I

### AMENDED FORMAL COMPLAINT

**Bost matter (Case No. 04–54)**

For its FIRST CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

1.

The Oregon State Bar was created and exists by virtue of the laws of the State of Oregon and is, and at all times mentioned herein was, authorized to carry out the provisions of ORS Chapter 9, relating to the discipline of attorneys.

2.

The Accused, Richard A. Crews, is, and at all times mentioned herein was, an attorney

at law, duly admitted by the Supreme Court of the State of Oregon to practice law in this state and a member of the Oregon State Bar, having his office and place of business in the County of Multnomah, State of Oregon.

3.

In February 2000, Gregory Bost (hereinafter "Bost") retained the Accused to pursue claims against James Roads (hereinafter "Roads") for breach of contract, conversion and unlawful trade practices in connection with the restoration of a car.

4.

In July 2000, the Accused filed a lawsuit in Multnomah County Circuit Court on behalf of Bost and against Roads. In January 2001, that lawsuit was dismissed because the court did not have jurisdiction over Roads.

5.

After January 2001, the Accused knowingly failed to inform Bost that the lawsuit had been dismissed. The Accused also knowingly made representations to Bost which suggested that the lawsuit was still pending and that the parties were moving toward a settlement. At the time the Accused made these representations, he knew they were false and material.

6.

In mid–2001, the Accused provided Bost with a copy of an agreement and release purportedly signed by Roads in which Roads agreed to pay Bost $23,000 plus attorney fees. At the time the Accused provided Bost with a copy of that agreement and release, the Accused knew that he had, without authority to do so, signed Roads's name to it.

7.

The Accused, with the intent to injure or defraud, falsely made or completed the above-referenced agreement, in violation of ORS 165.013.

8.

In January 2002, Bost received notice that Roads was asserting a lien on the car involved in the lawsuit and would be selling it at a public auction. Thereafter, the Accused informed Bost that the car could not be sold because the lawsuit described in paragraph 4 above was pending. At the time the Accused made this representation to Bost, he knew it was false and material.

9.

In 2002, the Accused represented to Bost that he had seized and sold property belonging to Roads and was waiting for the sale to be recorded before forwarding the sale proceeds to Bost. At the time the Accused made this representation to Bost, he knew it was false and material.

10.

The aforesaid conduct of the Accused constitutes a criminal act that reflects adversely on the Accused's honesty, trustworthiness or fitness to practice law; conduct involving dishonesty and misrepresentation; and neglect of a legal matter entrusted to him, in violation of the following rules of professional conduct established by law and by the Oregon State Bar:

A. DR 1–102(A)(2);

B. DR 1–102(A)(3); and

C. DR 6–101(B) of the Code of Professional Responsibility.

AND, for its SECOND CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

11.

Realleges and incorporates by reference the allegations of paragraphs 1 through 9 of its First Cause of Complaint as if fully set forth herein.

12.

In July 2003, Bost filed a complaint with the Oregon State Bar regarding the Accused's conduct. On November 12, 2003, and December 3, 2003, the Bar requested that the Accused provide a copy of Bost's file.

The Accused failed to provide a copy of that file. On March 19, 2004, and April 6, 2004, the Bar requested that the Accused provide additional information and documents. The Accused failed to provide the additional information and documents.

13.

While the subject of a disciplinary investigation the Accused failed to cooperate with inquiries from Disciplinary Counsel's Office, which is empowered to investigate or act upon the conduct of lawyers.

14.

The aforesaid conduct of the Accused constitutes failure to respond fully and truthfully to inquiries from an authority empowered to investigate or act upon the conduct of lawyers, in violation of the following standard of professional conduct established by law and by the Oregon State Bar:

A. DR 1–103(C) of the Code of Professional Responsibility.

### Palmer matter (Case No. 04–53)

AND, for its THIRD CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

15.

Realleges and incorporates by reference the allegations of paragraphs 1 through 2 of its First Cause of Complaint as if fully set forth herein.

16.

In early 2000, Bradley Palmer (hereinafter "Palmer") retained the Accused to represent him in a claim for wrongful arrest. On March 4, 2002, the Accused filed a lawsuit in the Superior Court of the State of Washington in and for the County of Skamania on behalf of Palmer.

17.

On July 26, 2002, the defendants in the lawsuit described in paragraph 16 above filed a motion for summary judgment. A hearing to consider that motion was scheduled for August 7, 2003. Just before the hearing, the Accused informed Palmer that the hearing had been canceled because the case had been dismissed as the defendants were in default. The Accused also informed Palmer that the defendants had filed a notice of appeal. At the time the Accused made these representations to Palmer, he knew they were false and material.

18.

Thereafter, the Accused provided to Palmer a copy of a notice of appeal purportedly prepared and signed by the defendants' lawyer. At the time the Accused provided a copy of the notice of appeal to Palmer he knew that be, without authority to do so, had prepared it and signed the defendants' lawyer's name to it.

19.

The Accused, with the intent to injure or defraud, falsely made or completed the above-referenced notice of appeal, in violation of WRC 98.60.020(1).

20.

The aforesaid conduct of the Accused constitutes a criminal act reflecting adversely on the Accused's honesty, trustworthiness or fitness to practice law as a lawyer in other respects; and conduct involving dishonesty, and misrepresentation, in violation of the following rules of professional conduct established by law and by the Washington State Bar Association:

A. RPC 8.4(b); and

B. RPC 8.4(c); of the Washington Rules of Professional Conduct.

AND, for its FOURTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

21.

Realleges and incorporates by reference the allegations of paragraphs 1 and 2 of its First Cause of Complaint, and paragraph 16 of its Third Cause of Complaint as if fully set forth herein.

**22.**

In early 2003, Palmer retained the Accused to represent him with some problems he was having with his mortgage company, Downey Savings and Loan Association (hereinafter "Downey"). After a number of months, the Accused informed Palmer that he had negotiated an agreement with Downey that would resolve all issues.

**23.**

The Accused subsequently advised Palmer and his wife to stop making mortgage payments to Downey because Downey had not satisfied the terms of the agreement described in paragraph 22 above. In July 2003, the Accused filed a lawsuit on behalf of the Palmers and against Downey in the United States District Court for Western District of Washington.

**24.**

Downey thereafter threatened to foreclose on Palmer's property. In response to Palmer's concerns about the foreclosure, the Accused sent him a copy of a restraining order prohibiting Downey from foreclosing, that had purportedly been issued and signed by the court in the lawsuit referenced in paragraph 23 above. At the time the Accused provided a copy of that order to Palmer he knew that he, without authority to do so, had prepared it and signed the judge's name to it.

**25.**

The Accused, with the intent to injure or defraud, falsely made or completed the above-referenced restraining order, in violation of WRC 98.60.020(1).

**26.**

The Accused forged the signature of a judge on the restraining order described in paragraph 24 above, in violation of 18 USC § 505.

**27.**

The aforesaid conduct of the Accused constitutes a criminal act reflecting adversely on the Accused's honesty, trustworthiness or fitness to practice law as a lawyer in other respects; conduct involving dishonesty, and misrepresentation; and conduct prejudicial to the administration of justice, in violation of the following rules of professional conduct established by law and by the Washington State Bar Association:

A. RPC 8.4(b);

B. RPC 8.4(c); and

C. RPC 8.4(d) of the Washington Rules of Professional Conduct.

AND, for its FIFTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

**28.**

Realleges and incorporates by reference the allegations of paragraphs 1 and 2 of its First Cause of Complaint, paragraph 16 of its Third Cause of Complaint, paragraph 22 of its Fourth Cause of Complaint as if fully set forth herein.

**29.**

In mid-January 2004, the Accused recommended that Palmer and his wife file Chapter 7 bankruptcy proceedings. Palmer informed the Accused that he needed to make sure certain things would happen before any bankruptcy filing, and further informed the Accused that he need to discuss the matter with him in person.

**30.**

On January 23, 2004, without authority from Palmer, the Accused filed a Chapter 7 proceeding on Palmer's behalf in the United States Bankruptcy Court for the Western District of Washington.

**31.**

On February 2, 2004, Downey filed a motion for relief from the Chapter 7 automatic stay. A hearing to consider that motion was scheduled for February 6, 2004.

**32.**

On February 5, 2004, the Accused informed Palmer that he was withdrawing

from representing him in the bankruptcy proceeding.

### 33.

The aforesaid conduct of the Accused constitutes withdrawing without taking steps to the extent reasonably practical to protect a client's interest; and conduct involving dishonesty and misrepresentation, in violation of the following rules of professional conduct established by law and by the Washington State Bar Association:

A. RPC 1.15; and

B. RPC 8.4(c); of the Washington Rules of Professional Conduct.

AND, for its SIXTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

### 34.

Realleges and incorporates by reference the allegations of paragraphs 1 and 2 of its First Cause of Complaint, paragraphs 16 through 19 of its Third Cause of Complaint, paragraphs 22 through 26 of its Fourth Cause of Complaint, and paragraphs 29 through 32 of its Fifth Cause of Complaint as if fully set forth herein.

### 35.

In February 2004, Palmer filed a complaint with the Oregon State Bar regarding the Accused's conduct. On February 12, 2004 the Bar forwarded the information it had received from Palmer to the Accused, and requested his response by March 4, 2004. The Accused made no response. On March 5, 2004, the Bar again requested that the Accused respond by March 12, 2004. The Accused made no response.

### 36.

While the subject of a disciplinary investigation, the Accused failed to cooperate with inquiries from Disciplinary Counsel's Office, which is empowered to investigate or act upon the conduct of lawyers.

### 37.

The aforesaid conduct of the Accused constitutes failure to respond fully and truthfully to inquiries from an authority empowered to investigate or act upon the conduct of lawyers, in violation of the following standard of professional conduct established by law and by the Oregon State Bar:

A. DR 1–103(C) of the Code of Professional Responsibility.

### Snell matter (Case No. 04–69)

For its SEVENTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

### 38.

Realleges and incorporates by reference the allegations of paragraph 1 and 2 of its First Cause of Complaint as if fully set forth herein.

### 39.

On May 15, 2002, David Snell (hereinafter "Snell") retained the Accused to represent him in a claim for wrongful termination. In October 2002, Snell instructed the Accused to file a lawsuit on his behalf, and provided the Accused with funds to file the case.

### 40.

Between October 2002, and September 2003, the Accused failed to pursue Snell's legal matter.

### 41.

In January 2003, the Accused represented to Snell that he had filed the lawsuit. At the time the Accused made that representation to Snell, he knew it was false and material.

### 42.

Between February 2003, and September 2003, the Accused represented to Snell that the lawsuit referenced in paragraph 41 above was moving forward. At the time the Accused made those representations, he knew they were false and material.

43.

The Accused filed a lawsuit on Snell's behalf on September 16, 2003. After September, 16, 2003, the Accused failed to pursue Snell's legal matter.

44.

The aforesaid conduct of the Accused constitutes conduct involving misrepresentation; and neglect of a legal matter entrusted to him, in violation of the following rules of professional conduct established by law and the Oregon State Bar:

A. DR 1–102(A)(3); and

B. DR 6–101(B) of the Code of Professional Responsibility.

For its EIGHTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

45.

Realleges and incorporates by reference the allegations of paragraph 1 and 2 of its First Cause of Complaint, and paragraphs 39 through 43 of its Seventh Cause of Complaint as if fully set forth herein.

46.

In December 2003, Snell filed a complaint with the Oregon State Bar regarding the Accused's conduct. On December 23, 2003, the Bar forwarded the information it had received from Snell to the Accused, and requested his response by January 13, 2004. The Accused made no response. On January 15, 2004, the Bar again requested that the Accused respond by January 22, 2004. The Accused made no response.

47.

While the subject of a disciplinary investigation, the Accused failed to cooperate with inquiries from Disciplinary Counsel's Office, which is empowered to investigate or act upon the conduct of lawyers.

48.

The aforesaid conduct of the Accused constitutes failure to respond fully and truthfully to inquiries from an authority empowered to investigate or act upon the conduct of lawyers, in violation of the following standard of professional conduct established by law and by the Oregon State Bar:

A. DR 1–103(C) of the Code of Professional Responsibility.

**Durshpek matter (Case No. 04–86)**

For its NINTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

49.

Realleges and incorporates by reference the allegations of paragraph 1 and 2 of its First Cause of Complaint as if fully set forth herein.

50.

On April 15, 2003, Sergey Durshpek (hereinafter "Durshpek") retained the Accused to represent him in a claim for injuries he sustained in a car accident. Later that month, the Accused filed a lawsuit on behalf of Durshpek.

51.

After July 2003, the Accused failed to pursue Durshpek's legal matter and failed to maintain adequate communications with him.

52.

On February 18, 2004, the court sent a notice to the Accused that the lawsuit described in paragraph 50 above would be dismissed on March 15, 2004, for failure to comply with the rules governing arbitration. The Accused failed to respond to that notice and failed to inform Durshpek that his case was going to be dismissed.

53.

Beginning in early 2004, Durshpek made numerous requests of the Accused for the return of his file. The Accused failed to respond to those requests.

#### 54.

The aforesaid conduct of the Accused constitutes neglect of a legal matter entrusted to him; and failure to promptly return client property in violation of the following standards of professional conduct established by law and by the Oregon State Bar:

A. DR 6–101(B);

B. DR 9–101(C)(4) of the Code of Professional Responsibility.

For its TENTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

#### 55.

Realleges and incorporates by reference the allegations of paragraph 1 and 2 of its First Cause of Complaint and paragraph 50 of its Ninth Cause of Complaint as if fully set forth herein.

#### 56.

On March 29, 2004, Durshpek filed a complaint with the Oregon State Bar regarding the Accused's conduct. On March 30, 2004, the bar forwarded that complaint to the Accused and requested his response by April 20, 2004. The Accused made no response. On April 21, 2004, the bar again requested that the Accused respond by April 28, 2004. The Accused made no response.

#### 57.

While the subject of a disciplinary investigation, the Accused failed to cooperate with inquiries from Disciplinary Counsel's Office, which is empowered to investigate or act upon the conduct of lawyers.

#### 58.

The aforesaid conduct of the Accused constitutes failure to respond fully and truthfully to inquiries from an authority empowered to investigate or act upon the conduct of lawyers, in violation of the following standard of professional conduct established by law and by the Oregon State Bar:

A. DR 1–103(C) of the Code of Professional Responsibility.

### Hannam matter (Case No. 04–87)

For its ELEVENTH CAUSE OF COMPLAINT against the Accused, the Oregon State Bar alleges:

#### 59.

Realleges and incorporates by reference the allegations of paragraph 1 and 2 of its First Cause of Complaint as if fully set forth herein.

#### 60.

On July 28, 2003, Dan Hannam (hereinafter "Hannam") filed a complaint with the Oregon State Bar regarding the Accused's conduct. The bar proceeded to investigate that complaint. On December 9, 2003, the bar requested that the Accused provide additional information regarding Hannam's complaint on or before December 22, 2003. The Accused made no response. On February 10, 2004, the bar again requested additional information. The Accused made no response.

#### 61.

While the subject of a disciplinary investigation, the Accused failed to cooperate with inquiries from Disciplinary Counsel's Office, which is empowered to investigate or act upon the conduct of lawyers.

#### 62.

The aforesaid conduct of the Accused constitutes failure to respond fully and truthfully to inquiries from an authority empowered to investigate or act upon the conduct of lawyers, in violation of the following standard of professional conduct established by law and by the Oregon State Bar:

A. DR 1–103(C) of the Code of Professional Responsibility.

WHEREFORE, the Oregon State Bar demands that the Accused make answer to this complaint; that a hearing be set concerning the charges made herein; that the matters alleged herein be fully, properly and legally determined; and pursuant thereto, such ac-

tion be taken as may be just and proper under the circumstances.

EXECUTED this 23rd day of July, 2004.

OREGON STATE BAR

By: /s/ Jeffery D. Sapiro

JEFFERY D. SAPIRO
Disciplinary Counsel

EXHIBIT 2

*AGREEMENT AND RELEASE*

James Roads, an individual, doing business as R & R Racing, an unregistered assumed business name hereby knowingly and voluntarily agrees to enter into this Agreement and Release ("Agreement") in order to resolve all outstanding issues regarding the claims submitted against him by Greg Bost.

1. RELEASE

Bost, in consideration of the money and other commitments from Roads set forth below in paragraph 2, will release and discharge Roads, along with all successors and assigns, employees and attorneys from all liabilities, actions, causes of action, suits, debt, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions, claims, and demands whatsoever, in law or equity, known or unknown. This Release will only be signed and executed upon complete and full payment of the obligations set forth in paragraph 2.

2. PAYMENT AND CONSIDERATION

(a) Roads agrees that within 90 days of the date of his signing this Agreement he will tender by certified funds the total of $23,129.73 made payable to Greg Bost; and

(b) Within the same time frame as set forth above will tender an amount to Richard A. Crews, PC to be determined at a later date for attorney fees and costs; and further

(c) If Roads fails to meet any of these obligations a judgment may be entered in any court of competent jurisdiction to recover said amounts and Roads waives any rights or defenses if any kind, including but not limited to any rights of notice or presentment.

3. NON–DISPARAGEMENT

Roads agrees that he will not make any negative or disparaging oral or written statements about Bost.

4. SEVERABILITY

In the event any provision herein is held to be invalid, unenforceable or illegal by any court regulatory authority having jurisdiction, that provision shall be severed from the remainder and replaced automatically by a valid, enforceable or legal provision containing terms as nearly like the severed provision as possible; and the Agreement as so modified, shall remain in full force and effect.

5. NO ORAL CHANGES

This Agreement constitutes the entire agreement. Any amendments to or changes in the obligation created by the Agreement shall not be effective unless reduces to writing and signed.

6. APPLICABLE LAW

This Agreement shall be governed by and construed in accordance with Oregon law without regard to conflict of laws of principles.

7. ATTORNEY FEES

Roads agrees to pay all attorney fees and costs, including expert costs and costs of investigation incurred in the event he fails to perform his obligations in paragraph 2 above.

Dated:

James Roads dbs R & R Racing

/s/ James Roads

EXHIBIT 3

NINTH CIRCUIT COURT OF APPEALS

BRADLEY PALMER, Jr.,
Plaintiff-Respondent,

v.

COUNTY OF CLARK, CITY OF BATTLE-GROUND, OFFICER YESKA AND OFFICER SHEPPARD, Defendants-Appellants.

Appellate No.

No. 2-00021-7

NOTICE OF APPEAL

1.

Defendants hereby give notice of appeal from the Order Striking Defendant's appearance and Answer entered this case.

2.

The parties to this appeal are:

Appellants:

City of Battleground and

Officers Yeska and Sheppard

Respondent:

Bradley Palmer, Jr.

3.

The names, bar numbers, and addresses, of the attorneys for the parties are:

Attorney for Defendants–Appellants:

John E. Justice, WSBA No. 23042

PO Box 11880

Olympia WA 98508

Attorney for Plaintiff–Respondent:

Richard A. Crews WSBA No. 27895

101 SW St. Suite 700

Portland, OR 97204

4.

Appellants designates the record in its entirety, including the trial court file.

5.

This appeal is timely and otherwise properly filed before the Court of Appeals.

6.

Appellants hereby request copies at Appellants' expense of the transcript/audio record. Copies are to be served on the parties to the appeal listed in paragraph 3 above.

Dated this 8th day of August, 2003.

LAW, LYMAN, DANIEL,

KAMERRER & BOGDANOVICH, P.S.

/s/ John E. Justice

John E. Justice, WSBA No. 23042

Attorneys for Defendant, City of Battle-ground

Officers Yeska and Sheppard

EXHIBIT 4

Richard A. Crews, WSBA #27895

RICHARD A. CREWS, PC

101 SW Main St. Suite 700

Portland, OR 97204-3240

Telephone: (503) 201-3678

Facsimile: (503) 274-8660

Email: arcp3@hotmail.com

IN THE UNITED STATE DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

BRADLEY PALMER, JR. AND MARTHA PALMER, Plaintiff,

vs.

DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.,
Defendant.

Case No. C03-5406 RBL

RESTRAINING ORDER

This matter came before the Court on the Plaintiffs' Motion for a Permanent Order Restraining Defendants from proceeding with any foreclosure of the real property which is the subject of this case, the Court having reviewed the pleadings, having heard the arguments of counsel and otherwise being fully informed on the premises, it is hereby

ORDERED that defendant and any of its agents, officers, representatives or contractors are hereby enjoined and restrained from engaging in any action to foreclose any real property owned by the plaintiffs until such further order of this Court, it is further

ORDERED that defendant is to remove any reference of any foreclosure action on any real property owned by the plaintiffs from the plaintiffs' credit reports and provide proof of its compliance with this Order to plaintiffs and their counsel within 30 days of the defendant's receipt of this Order.

_____
United States District Court Judge

Prepared and submitted by:

_____
Richard A. Crews, WSBA#27895
Attorney for Plaintiffs

# EXHIBIT 5

Information Resource Center    CASEMAKER -- NO         09:03:17 22 DEC 2004

Bar #: 952410  Richard A Crews                                    Judge - No
                                        Type: S Suspended          Gender: M
                                  Admitted by: E  Bar Exam
                                   Other Bars:
Office: Richard A Crews PC                    :
        101 SW Main St Ste 700         Phone: 503 201-3678
        Portland, OR 97204              FAX: 253 295-3576
                                      E-mail: orcp3@hotmail.com
                                         Web:
Long Firm:

Birth Date: 02/14/1970      Mail Cd: 1    NMRCD  Description\Comments
Ethnicity.: White          Vote Reg: 5
County....: 26 - Multnomah  Jud Dist: 4
Grad Date: 05/27/1995       Alt Vote:
Admitted..: 09/22/1995     Res County:
Res Agent:
Law School: Northwestern School of Law
Comm Media: Email   Fax
OSB CLE...: Y
Sections..: Y        N
Other OSB.: Y        N

## EXHIBIT B

### IN THE SUPREME COURT OF THE STATE OF OREGON
### TRIAL PANEL OPINION

In this matter, the Accused failed to answer or appear. Accordingly, the Trial Panel entered an Order, dated October 25, 2004, finding the accused in default pursuant to BR 5.8. The Trial Panel is, therefore, taking the allegations in the Bar's Formal Complaint as true.

The Trial Panel exercised its discretion to request and consider evidence and legal authority submitted by the Bar limited to the

issue of sanctions. BR 5.8. The Panel has reviewed the Bar's submission and hereby adopts as its findings and conclusions the facts and recommendations set forth in the Bar's sanctions memorandum submitted on December 22, 2004. That memorandum is attached hereto and incorporated herein by this reference.